| 137 | 401 |
|-----|-----|
| 138 | 111 |

# Kennedy Stave & Cooperage Co. v. Sloss Sheffield Steel & Iron Co.

*Bill in Equity by Owner of Mineral Rights to enjoin Owner of Surface from cutting Timber from said Lands.*

1. *Grant of mineral rights and timber; when deed inoperative to convey timber.*—A deed which grants, bargains, sells and conveys to the grantee "all the coal, iron ore and other minerals, in, under and upon" certain specifically described lands, "and also all the timber and water upon the lands necessary for the development, working and mining of said

26c

coal, iron ore and other minerals, and the preparation of th.. same for market and the removal of the same," is inoperative to convey the timber on said described lands or any part thereof, because of uncertainty in the description of the same; the terms used not importing a conveyance of all the timbers on said land, or of all the timber of a certain species thereon, nor all of any certain dimensions, nor of any definite timber at all, but only such timber, or such part of the timber on said lands, as may at some future time be of necessary use to specified · ends.

2. *Same; same; effect of such conveyance as to timber.*—Such deed is not wholly inoperative and void *in toto* in respect of the timber on the lands described, but constitutes a grant of a right to use timber off the lands for the purposes specified.

3. *Same; same; grant of a profit à prendre.*—Such a grant of a right of user of the timber is a grant of a *profit à prendre,* and when coupled with the conveyance of title to some interest in the lands of the grantor—as in this instance, the minerals in, under and upon the same—such right is a *profit à prendre* appurtenant to the interest conveyed, and is in the nature of an easement appurtenant.

4. *Grant of mineral rights and timber; effect of such conveyance; when grantee can not enjoin cutting of timber.*—A conveyance of the mineral rights in certain described lands, "and also all the timber and water upon the lands necessary for the development, working and mining" of said minerals, and the preparation of the same for market and the removal of the same, being, so far as the timber is concerned, merely the grant of a right to use the timber from said land for the specified purposes, and such right to cut and use the timber being uncertain both as to the time of its exercise and as to the amount of the timber to be eventually taken under such deed, the grantee cannot exercise the right to take and use the timber on the lands until he comes to realize the estate so conveyed by taking out the minerals; and until such time transpires, the grantor in said conveyance or the owner of the surface is entitled to the absolute and unlimited right to use and dispose of the timber on said lands; and until such time, the grantee can not maintain a bill in equity to enjoin the grantor or those claiming the surface under him, from cutting and removing the timber from said lands.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

This is a bill in equity filed by the appellee against the appellant, seeking injunctive relief against the defendant from cutting timber from certain lands situate in Walker county, Alabama, the minerals in which, together with all necessary timber and other easements commonly termed mineral rights, are owned by the complainant, and the surface by another party, under whom the defendant claims the timber on the lands under a contract made subsequently to the severance in ownership of the minerals and surface.

The bill avers, in substance, the ownership by the complainant of the coal, iron and other minerals in, under and upon the lands described in the bill; and that, in and by the conveyances under which it claims these minerals, there was also, among other things, granted and conveyed to the complainant all the timber on the lands necessary for the development, working and mining of the coal, and other minerals; that the complainant's vendor acquired the coal, and other minerals, and timber, and other mineral rights from several persons, they each conveying to it separate portions thereof; that there are large deposits of coal in, under and upon the lands, and that, while it can not be definitely ascertained in advance what part of the timber on each tract is necessary for mining the coal, experience in the section in which the lands lie, has shown that substantially all the timber will be needed for that purpose, and that the complainant contemplates mining the coal in, under and upon the lands, in the near future, through mines already, and hereafter to be opened by it, upon contiguous lands owned by it. The necessity for the timber in operating the mines and the great loss to the complainant by stripping the lands of the timber, are also averred. The bill further avers that the defendant, claiming the right under some contract with the owner or owners of the surface, subsequent to his or their conveyance of the minerals and timber, is cutting and removing the timber from the lands, the timber so being cut being such timber as is suitable and needed

for mining the coal; and defendant threatens to continue to cut and remove the same.

The prayer of the bill was "that a temporary injunction be issued out of this honorable court, restraining and enjoining the said Kennedy Stave and Cooperage Company, its agents and servants from further cutting any timber on said lands, or any of them, and that upon final hearing the injunction be made perpetual; that an account may be taken and stated against it by this honorable court for all timber already cut and removed from said lands by it, and that it be required to pay therefor; and for such other, further or general relief as in equity and good conscience your orators may be entitled to in the premises."

A preliminary injunction was issued upon the filing of the bill and entering into bond as required by law.

The respondent demurred to the bill and moved to dismiss the bill for the want of equity, and also moved to dissolve the temporary injunction for the want of equity in the bill.

On the submission of the cause on the motions and the demurrer, the chancellor rendered a decree overruling each of them. From this decree the respondent appeals, and assigns the rendition thereof as error.

BANKS & SELHEIMER and KERR & HALEY, for appellant.—Has complainant a plain, complete and adequate remedy at law for such injury as may result from the cutting of timber? The answer to this question must depend largely upon the nature of complainant's estate or interest in the timber and the character and measure of the damages resulting from the cutting of the same. The question is a new one in this court, and so far as we have been able to ascertain, has received little, if any discussion in any other court; but it has become a question of much importance in this State. The complainant claims under a deed which conveys not only all the coal and other minerals but also "all the timber and water upon the lands necessary for the development, working and mining of said coal," etc. No mine has been opened on the land and complainant is

not in the actual possession. It would seem that complainant cannot be considered the absolute owner of the timber, even though all of it be necessary for the development and mining of the coal, since he can cut and use it only, in the event he opens a mine on the land and then only for the purpose of developing, working and mining the coal under this particular land. His right to the use of the timber is purely a contingent right. And yet it is a vested right; one that he can transfer with the mineral interest. If we assume that he has no right to the immediate possession of the timber, because he has not yet opened any mine on the land, and may never do so, it may be true, that he cannot maintain an action of trespass for any injury done to the timber. But he will be entitled to the possession at any time he opens a mine, and the injury to the mineral interest in the land resulting from the destruction of the timber will be permanent. Complainant may be said to be entitled to the immediate possession of said timber, since it may at any time begin to mine the coal on said land, and can, therefore, sustain an action of trespass for injury to or the destruction of the timber. Complainant's right to the timber under its deed partakes of the same nature. More strictly speaking it is not an easement but a *profit à prendre*, since it carries the right to take the product of the soil, namely, the timber. But even if so considered, the right of the owner to protect it, and to have redress by an action at law for injuries to the right remains the same. *Riddle v. Brown*, 20 Ala. 412; Barringer & Adams on Law of Mines and Mining, p. 601; *Heaney v. Butte etc. Co.*, 10 Montana, 590.

The deed conveys "all the timber and water on the land necessary for the development, etc. of the coal." Such description of the thing conveyed is too uncertain to be valid. It is impossible to say at the time the deed is made what particular timber, or how much, will be necessary for the mining and development of the coal and other minerals; and not until the coal and all other minerals have been substantially all mined can it be ascertained how much of the timber will be required. There is no way, therefore, by which the description can

be rendered certain. The case is different from that in which it was held that a description "all the saw timber on," etc. was sufficiently definite, since it can readily be determined what timber was thereby conveyed. The deed, we insist, is void for uncertainty, in so far as it attempts to convey the timber. Being void, all that complainant can claim, with respect to the timber, is a parol license to cut and use the timber for mining purposes. *Riddle v. Brown*, 20 Ala. 412.

WALKER, TILLMAN, CAMPBELL & WALKER, *contra.* By the deed forming a part of complainant's chain of title, according to the averments of the bill, there was conveyed—through mesne conveyances—all timber nessary for mining, etc., of the minerals conveyed. Is there not by such conveyances an implied covenant that the owner of the surface will not remove the timber by himself or through others? In other words, will do nothing to defeat or impair the grant. This is a covenant negative in its character. The conveyance, not conveying the legal title to the timber, creates a right in the nature of an easement; an easement to use, when the occasion arises, such of the timber as may be necessary to mine the minerals.—3 Pom. Eq. Jur., § 1295; High on Injunctions, § 697, *et seq.; Lide v. Hadley*, 36 Ala. 627; 1 Beach on Injunctions, §§ 457-474 *et seq. Morris v. Tusc. Co.*, 83 Ala. 572, and authorities cited.

We contend that there is nothing in the suggestion that the deed is void as to the timber for uncertainty; that it was uncertain when the deed was executed, and will continue to be uncertain until the coal is mined, what timber was granted. The essential part of the grant was of the coal, iron ore and other minerals in under and upon the lands; and, as an incident to the enjoyment of these minerals, there are granted certain surface rights, including expressly water and timber necessary to the mining of the minerals. The grant of the timber is certain, because it can be rendered certain; and the mere fact that the time of enjoyment may be postponed for an indefinite period, and, therefore, for such period, the grant may be uncertain, can-

not be important in determining whether the grant is or is not valid. Numerous grants of timber, by their terms, to be rendered certain in the future, have been upheld by the courts. Many cases are cited in the note to *McRea v. Stillwell*, 55 Lawyer's Reports, Annotated, 513, and the court's attention is invited to them.—See also, *Harrison v. Heflin*, 54 Ala. 556.

McCLELLAN, C. J.—The muniments upon which rest complainant's rights in respect of the timber, the cutting of which by the respondent is sought to be enjoined in this case, purport a grant, bargain, sale and conveyance of the coal, iron ore and other minerals in certain described lands and also of the timber and water upon the same necessary to the mining and marketing of the minerals; the language of the several deeds in this connection being as follows: "the parties of the first part have granted, bargained and sold, and do hereby grant, bargain, sell and convey to the party of the second part all the coal, iron ore and other minerals in, under and upon the following described lands  *  *  *, and also all the timber and water upon the lands necessary for the development, working and mining of said coal, iron ore and other minerals and the preparation of the same for market, and the removal of the same." It is contended for respondent that these deeds are inoperative to convey the timber on the lands or any part thereof because of uncertainty in the description of the same; the terms used not importing a conveyance of *all* the timber on certain lands, nor of all timber of a certain species thereon, nor all of certain dimensions, nor of any defined timber at all, but only of such timber, or such part of the timber on the land as may at some future time be of necessary use to the specified ends. This position, confined to the precise terms in which we have stated it, is unquestionably well taken. Clearly the deeds do not describe or define what timber is intended to be dealt with. It may be all the timber, or it may be only a comparatively small part of it, depending upon whether all or only a part shall be necessary for mining and marketing the minerals in the land. How much timber will be necessary is conjectural and uncertain;

and that being the only consideration upon which it can ever be determined what timber is within the terms of the instrument, and that being itself wholly uncertain, there is no predicate for the operation of the maxim *id certum est quod certum reddi potest.* A description in a deed uncertain on its face cannot be rendered certain by a reference therein to an extraneous uncertainty. These deeds are not helped by their reference to such timber as may be necessary to the mining and marketing of the minerals since that is itself wholly uncertain. As conveyances of title to the timber—as present transfers of this corporeal—therefore they are inoperative and void.—*Stakely. v. Butler.* Hobart, 168; *Fletcher v. Livingston,* 153 Mass. 388; *Pfistner v. Bird,* 43 Mich. 14; *Moss v. Meshew,* 8 Bush (Ky.) 187.

But it by no means follows that these deeds are wholly inoperative and void *in toto* in respect to timber on the lands described. To the contrary, it is quite clear that, while the instruments in terms import a present conveyance of such timber as may be necessary to certain ends, the intention of the grantors was to *grant a right to use* timbers off the lands for those specified purposes, the mining and marketing of the minerals found thereon and therein; and we may, therefore, give to these muniments that operation, not only because it is not inconsistent with the language employed, and they cannot operate as *conveyances of title* to the timber because of the uncertainty of description to which we have adverted, but also and further because the intent that they should so operate is affirmatively evinced by the terms in which they are couched. So interpreted and construed —as *grants* of rights of user and not as *conveyances* of timber—they are not bad for uncertainty. The thing granted is *the right* to use the timber from certain lands for certain specified purposes, and while the amount and character and time of user of the timber are uncertain, there can be no mistake or uncertainty as to *the right* intended to be and in fact granted. In this respect the instruments stand upon the same footing as a grant of estovers, a grant to take gravel, and the like.

Such a grant passes nothing palpable, nothing corporeal. It vests in the grantee an incorporeal hereditament. It is not in itself an easement, which in strictness is a mere use of the land of another without taking anything from it, but it involves the easement of going upon the land of the grantor to take the necessary timber. It is a *profit à prendre* in the grantee in respect of the land of the grantor—a mere right to take the product of the grantor's land. And, when, as under the grants being considered, it is coupled with a conveyance of title to some interest in the land of the grantor—as here, the minerals in, under, or upon the same—it is a *profit à prendre* appurtenant to the interest conveyed and is in the nature of an easement appurtenant.—*Clark v. Way*, 11 Rich. (S. C. L.) 621; 19 Am. & Eng. Ency. Law, pp. 259 *et seq.*; 10 Am. & Eng. Ency. Law, pp. 398-403, 409; Washburn's Easements & Servitudes, pp. 8, 9, 565.

The *profits à prendre* under the grants now before us are limited in at least two important particulars: *First,* there is a limitation as to the time, or, perhaps more accurately, the occasion of the taking and use of the timber upon the several tracts of land. The grantee cannot take it when and as it pleases, but it can only be taken and used in the mining and marketing of the minerals in the lands—to the end of getting out the coal, iron ore and other minerals in each tract, preparing it for market and transporting it to market. Until the grantee goes upon a given tract and inaugurates mining operations he has no right to take or use any timber off that particular tract. So when he has ceased to get out the minerals therein, he must also cease to take timber therefrom: His right to take and use timber, in other words, its concomitant with his mining operations, may not be exercised till such operations are begun and continues only so long as they are prosecuted. *Second,* the further limitation is as to the amount or quantity of timber the grantee may take in his mining operations, and this is express, covering and granting no more than shall be found to be necessary to the mining and marketing of the minerals. When the complainant, its successors or assigns, will enter

upon the work of getting out the minerals from any one of the parcels of land referred to in the bill, and, hence, when the time for the exercise of its right to take timber will arrive, are matters of great uncertainty, if not purely conjectural. These minerals have been there untouched for thousands of years. Doubtless during the ages of their existence many crops, so to speak, of timber have grown to maturity or to the stage of mining utility, and given place, naturally or through fortuitous causes, to succeeding crops. What has been in this connection may recur and be repeated *ad infinitum*. It is shown by the bill that years have elapsed since the mineral interests in these lands were severed from the surface interests for mining purposes, and that the minerals have not yet been touched. May not many more years elapse? Who can say? The complainant does not undertake, and in the nature of things cannot undertake, to say with certainty when it will inaugurate its mining operations upon these lands. The effort made by the bill in this connection comes to no more than averment of a probability that mines will be opened on some of the lands within two years, and generally that they will probably be reached within a few years, and even this is qualified by averments as to the inadaptability of timber of a succeeding growth to the purposes in view. Taking the case presented by the bill, it is conservative to say the time within which the complainant can and will exercise its right to take timber from any of these tracts of land is fairly uncertain and conjectural. And when that time comes, how much of the timber then on the lands will be necessary for mining and marketing the minerals therein? Nobody knows. Nobody pretends to know. It is said in the bill that substantially all the timber now on the land will be so necessary. But the timbers there now may not be at all necessary years hence when the lands are mined. At best the averment is a palpable conclusion upon considerations confessedly uncertain, for the impossibility of determining beforehand how much timber will be requisite to getting out and marketing the minerals is set up in the case as demonstrating the inadequacy of

any remedy the complainant might have at law sounding in damages for the destruction of the timber. So that the rights granted by these deeds to cut and use the timber of the grantors are rights essentially uncertain both as to the time of their exercise and as to the amount of timber to be eventually taken. Meantime what are the rights of the *owners* of all the timber on these lands? They have the *title* to all this timber. They also have the title to all this land excepting the minerals therein. The surface is theirs to do with what they will, subject to easements necessary to mining and marketing the minerals. The lands are now and were when these conveyances were made in timber. Have the owners any right to use their property? If so, what are the limitations upon that right? May they devote it to the uses of husbandry and agriculture? May they reclaim it for homes and dwelling places? May they make any use whatever of their estates in the lands, or does the mere existence of the right in complainant to take at some indefinite time in the future some indefinite amount of timber from these lands entitle the complainant to invoke the powers of chancery to deprive them of all use in and of their property, until it shall suit the convenience of the grantee to take out of the lands every ton of coal and of iron ore and of other minerals that may be in them? Have they in rea'ty conveyed for an indefinite period of time all right, title and interest in the lands and all that is in them or under them or upon them absolutely to the complainant by these muniments by which they intended to convey and in which in terms they have conveyed only the minerals and these *profits à prendre* in respect of the timber? We cannot see our way to such a conclusion. But to such conclusion we must come before we can sustain the equity of this bill, which prays that these grantors be enjoined from taking any timber from any of these tracts of land until complainant shall have exploited them for minerals and taken from them whatever minerals they bear or contain. We are of the contrary opinion. The grantors have the title, technical and beneficial, to all interests in these lands, including the timber upon them, except the minerals and easements necessary to

getting out the minerals. That which passed by the grants as to the timber was not title, but a mere right to take and use timber on the land when the grantee comes to realize its estate by taking out the minerals. Until that time and occasion for the use by the grantee of the timber transpires the grantors in these instruments may work their own will in respect of the timber. They may clear it off to the end of devoting the land to agriculture. Or, to this or other end, they may sell and convey the timber to third persons, as these grantors appear to have done. There is no middle ground. The grantors must meantime have the absolute and unlimited right to use and dispose of the timber or they must be without right whatever in respect of it, and hence practically without right to use the surface of the lands. The hardship to the grantors of adopting the latter view is recognized by counsel for appellee: "That it may be a hardship," they say, "upon the owner of the surface to have this timber tied up until the coal is mined, results from his voluntary grant, and he cannot complain. If he had desired to protect himself against such a contingency, he should have done this in his deed." Of course, hardships in the operations of grants cannot control their terms; but where it is a question as to what the parties intended should be the operation of a grant, and the terms employed do not foreclose this question, hardships incident to an interpretation favorable to one of the parties may be looked to in determining what the real intention was; and such consideration in this case makes for a construction of these grants which will leave to the grantors the unfettered use of the surface and timber except such of the surface and the timber then upon it as may be found necessary to the mining and marketing of the minerals when such necessity actually arises. To so hold requires no warping of the terms of these conveyances, but is in line with the language employed and the intention of the parties fairly deducible therefrom apart from consideration of the manifest hardships of the construction contended for; and such consideration is in fact cumulative upon the language itself. The grant

is without limitation as to the time when timber on the land may be taken and used by the grantee for the purposes specified, and on the other hand it involves no covenant that there shall be timber upon the lands when the grantee comes to open and operate the mines. It gives the use of timber that may be there and necessary in the operations as they progress. It is much the same case as where A demises his farm to B for a term to begin years in the future. This demise involves a grant of estovers during this future term of B; but it would hardly be contended that B could, upon the execution of such lease, enjoin A to take timber from the land upon the theory that such timber would probably be necessary to supply estovers during his leasehold to commence ten or twenty years in the future. No more in the case at bar can it be maintained that the grantors have in substance and effect covenanted and bound themselves to conserve the *profits à prendre* they have granted, uncertain as to the time and extent, as we have indicated, by maintaining timber plantations upon their land for the benefit of the grantee and thus devoting the land itself, indefinitely as to time, as fully to the uses of the grantee as if all interests in it had been conveyed. They have not thus tied up their lands nor the timber upon them by these instruments which they have voluntarily executed and which the grantee has accepted, paying the considerations. No such purpose on their part can be deduced from the circumstances or from the writings, but quite the contrary. If the grantee in these several deeds had desired to secure to itself the timber on the land from and after the dates of these transactions, it should have purchased it and taken muniments covering it and carrying title to or the right to use all of it.

The bill of complaint, we conclude, is without equity. The chancellor erred in overruling the motion of the respondent to dissolve the injunction for want of equity in the bill and in overruling the motion to dismiss the bill for want of equity. The decree will be reversed, and a decree will be here entered granting both said motions, dissolving the injunction and dismissing the bill.

Reversed and rendered.