(76 South. 347)

**H. H. HITT LUMBER CO. v. CULLMAN COAL & COKE CO. et al. (6 Div. 367.)**

(Supreme Court of Alabama. July 2, 1917.)

1. LOGS AND LOGGING ☞3(14) — SALE OF TIMBER—RIGHT TO REMOVE—"CONDITION."

Where the conveyance of standing timber provided that the grantee should have and hold title thereto upon the "condition" and providing it was cut and removed from the land on or before a certain date, the estate was subject to defeasance on failure to cut the timber on such date.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condition.]

2. LOGS AND LOGGING ☞3(5)—SALES OF TIMBER—DEFICIT IN AMOUNT—RELIEF.

Where the seller of standing timber guaranteed that it would cut a certain number of feet, and provided that the purchaser could cut timber from other land, should there be a deficit, but the purchaser did not actually cut all the merchantable standing timber, he was not entitled to rescind on the ground that there was a deficit, or that the seller misrepresented the amount of timber upon the land.

3. LOGS AND LOGGING ☞3(7)—SALES OF TIMBER—DEFICIT IN AMOUNT—RELIEF.

Since the owner of land, who sells a mineral and coal right with the right to cut timber necessary to the mine, retains the title to the timber until it is actually cut for mining purposes, another, who purchases the timber from the owner before it is cut for the mine, cannot rescind the contract upon the ground that the seller has no title.

Appeal from Chancery Court, Cullman County; James E. Horton, Jr., Chancellor.

Bill against the Cullman Coal & Coke Company and others, wherein the H. H. Hitt Lumber Company intervened by a bill in the nature of a cross-bill. Decree dismissing the cross-bill, and the Lumber Company appeals. Affirmed.

E. W. Godbey and Callahan & Harris, all of Decatur, for appellant. Eyster & Eyster, of Albany, George H. Parker, of Cullman, and Cabaniss & Bowie, of Birmingham, for appellees.

McCLELLAN, J. The original bill was filed by creditors to dissolve and wind up the affairs of the Cullman Coal & Coke Company, a corporation created in the year 1909. The reason for the dissolution sought was that the corporation was financially unable, though solvent, to perform its functions and effect its purposes. Code, § 3512. The Hitt Lumber Company—with others alleged to be creditors of the Coal & Coke Company, but who have not joined the Hitt Lumber Company in invoking review of the decree in question—intervened through a bill in the nature of a cross-bill, wherein mismanagement of the corporation's affairs was charged, and the validity and bona fides of various indebtednesses of the corporation mentioned in the original bill were assailed. The Hitt Lumber Company's right to bring into question the stated matters asserted in its cross-bill depended upon whether the Lumber Company was a creditor of the Cullman Coal & Coke Company; it being not otherwise concerned in the corporation's conduct, condition, or continued existence. The chancellor found that the Hitt Lumber Company was not a creditor of the Cullman Coal & Coke Company, and hence dismissed the bill in the nature of a cross-bill.

The Hitt Lumber Company's claim that it is a creditor of the Cullman Coal & Coke Company arises out of the circumstances to be stated. On March 27, 1912, the Cullman Coal & Coke Company executed and delivered to the Hitt Lumber Company a deed which, omitting other presently unimportant terms, reads:

"Know all men by these presents that Cullman Coal & Coke Company, a corporation under the laws of Alabama, and hereinafter described as grantor, for and in consideration of one dollar and other valuable considerations to it in hand paid by H. H. Hitt Lumber Company, an Alabama corporation, hereinafter described as grantee, the receipt whereof is hereby acknowledged, hereby grant, bargain, sell, and convey unto said grantee all and singular the *standing timber* now upon the following described lands, to wit: * * * To have and to hold unto the said grantee, its successors and assigns, forever, upon the condition and providing the same is *cut and removed from the said above-described lands on or before the first day of May, 1915, the said time being the essence of this conveyance.*" (Italics supplied.)

The consideration stated in the deed was paid by the grantee, Hitt Lumber Company. On July 17, 1912, approximately four months later, these companies executed the following instrument:

"This agreement, entered into this seventeenth day of July, 1912, by and between H. H. Hitt Lumber Company, an Alabama corporation, party of the first part, and Cullman Coal & Coke Company, an Alabama corporation, party of the second part, witnesseth:

"I. Said first party has purchased on March 27, 1912, from said second party for twelve thousand dollars, and other considerations, the merchantable standing timber owned by said second party in township 12 of range 3 west, in Cullman county, Alabama, more particularly described in a deed of conveyance from said second party to said first party of March 27, 1912.

"II. As a part of the consideration for said purchase, said parties agree that a contract between said parties, of date September 4, 1911, covering the use of said second party's track for hauling logs of said first party, shall be and is hereby amended to terminate at the date when said second party shall begin to operate its railroad in Cullman county, Alabama.

"III. Upon the termination of said contract of September 4, 1911, as provided in clause 2 hereof, said second party agrees to haul logs for said first party from bridge No. 1, to Cullman, Alabama, at the terminal of its road, for seven and 50/100 dollars per car load of fifty thousand pounds or less.

"IV. Said first party agrees to cut and remove all timber purchased as described herein from the lands of said second party on or before May 1, 1915.

"V. Said second party guarantees that said timber sold to said first party as stated herein contains eight million feet log scale, Doyle rule; should the actual measurement show a less number of feet, said second party agrees to refund to said first party an amount equal to one and

50/100 dollars per thousand feet of such shortage, to be paid for in logs at $1.50 per thousand feet to be cut by said first party under the terms and conditions hereon from sections 25 and 35, township 12, range 4 west, with the further condition, however, that all poplar logs cut on said sections 25 and 35, township 12, range 4 west, measuring 24 inches in diameter, inside the bark (measured four feet from the ground), shall be credited on said shortage at five dollars per thousand feet log scale, Doyle rule. Should at these respective prices of $1.50 and $5 per thousand feet the total logs cut from said lands in township 12, range 3 west, and said sections 25 and 35 aggregate in value less than $12,000, said second party agrees to pay the deficit in cash with interest at 6 per cent. per annum. Should at these respective prices of $1.50 and $5 per thousand the total logs cut from said lands in township 12, range 3 west, and said sections 25 and 35, township 12, range 4 west, exceed in total value $12,000, then said first party is to pay said second party said excess at $1.50 and $5 per thousand feet respectively.

"VI. Said first party agrees, if requested by said second party, to furnish at any time an affidavit of one of its officers to the measurement of logs cut on said land or part of same, and to allow said second party to inspect its books, containing a record of measurement of the logs cut on said land; it being understood and agreed that said first party shall keep a book of the record of all logs and timber cut from said lands."

It is to be noted that none of the timber on sections 25 and 35, mentioned in the instrument of July 17, 1912, was conveyed by the deed of March 27, 1912. On April 11, 1911, approximately a year before the above-noted conveyance to the Hitt Lumber Company was executed, the Cullman Coal & Coke Company executed to the Parker Bank & Trust Company, as trustee, a mortgage on "all the coal in, under, and upon the lands," and such timber thereon as should be necessary for mining, etc., of the coal, to secure an issue of $750,000 of the 15-year bonds of the Cullman Coal & Coke Company. The bonds were not sold; but a considerable proportion of the issue authorized were given to alleged creditors to secure their claims against the corporation. The mortgage was duly recorded in the office of the judge of probate of Cullman county. In the mortgage these provisions appear:

"And also all the timber and water upon the same necessary for the development, working, and mining of said coal, and the preparation of the same for market, and the removal of the same; and also the right of way, and the right to build roads of any description over the same, necessary for the convenient transportation of said coal from said lands, and the conveying and transporting to and from said lands all material and implements that may be of use in mining and removal of said coal or in the preparation of the same for market; and also the right to build houses for all employés and machinery. * * * The mortgagor agrees and covenants that this indenture is, and will always be, kept a first lien upon all the premises and property described in the granting clauses thereof, and upon all renewals, betterments, and improvements thereof, as herein provided. * * *"

On, to wit, May 26, 1914, the Hitt Lumber Company caused to be delivered to the Cullman Coal & Coke Company the following communication, claiming a rescission on the grounds stated therein, viz.:

"Decatur, Ala., May 26, 1914.

"Cullman Coal & Coke Co., Cullman, Ala.— Gentlemen: This is to give you notice that the H. H. Hitt Lumber Company has elected to and does rescind the contract entered into with the Cullman Coal & Coke Company on the 27th day of March, 1912, and the contract supplemental thereto, executed on the 17th day of July, 1912; copies of each of said contracts being hereto attached. Demand is hereby made for the return of the consideration paid you on said contracts, namely, $12,000, with the interest thereon. The rescission of said contracts is prompted by various and divers false representations and misrepresentations made to the H. H. Hitt Lumber Company by the officers and agents of the Cullman Coal & Coke Company in the negotiations leading up to the execution of the contracts and which induced the execution thereof, among which representations are:

"(1) That the railroad of the Cullman Coal & Coke Company would be completed and in operation from bridge No. 3 on Ryan's creek in Cullman county to Cullman, Alabama, so that the timber described in said deeds could be hauled to Cullman over said road, within the time allowed in said contracts for its cutting and removal, and hauled at advantageous rates to the H. H. Hitt Lumber Company.

"(2) That the land described in said contracts contained 8,000,000 or more feet of merchantable timber; whereas, the timber on said lands falls far short of said representation.

"(3) That the timber on said land would run 75 per cent. white oak, poplar, red oak, and ash, and in no event would it exceed 40 per cent. yellow pine; that in fact the yellow pine would fall far below that figure; whereas, the yellow pine on said lands largely predominates all other timber and is of very inferior quality.

"(4) That the timber on said lands was of such quality as that it was worth as it stood at that time $3 per thousand feet; whereas, the greater part of the timber had thick sap, or was wormy, and was not worth marketing.

"(5) That the Cullman Coal & Coke Company owned and had the right to sell the timber on said lands at the time of the execution of the contract; whereas, much of said timber was under mortgage and the Cullman Coal & Coke Company had no title whatever to the greater part of sections 25 and 35, township 12, range 4 west.

"You are further advised that at the time of discovering the untruthfulness of such representations we had cut from the lands enumerated in the contract of March 27, 1912, 30,000 feet of logs. These logs were hauled to Blount Springs and are now located at that place, ready and convenient for shipping. We hold them subject to your order. The logs are perishable, and we are willing to take them at their reasonable value."

[1] The conveyance of March 27, 1912, operated, by the use of express terms, to invest the Hitt Lumber Company with a conditional, defeasible estate alone in the "standing timber" on the lands lying in township 12, range 3; the defeasance to the title to the standing timber being predicated of the removal of the timber "on or before the first of May, 1912, the said time being the essence of this conveyance." Fully accepting the guidance of the rule that a deed will not be construed to create an estate on condition, unless language is used which, according to the rule of law, ex proprio vigore, imports a condition, or the intent of the grantor to

make a conditional estate is otherwise clearly and unequivocally indicated, it must be held that the stipulation that the grantee shall have and hold title to the standing timber "upon the condition and providing" it was cut and removed from the land on or before May 1, 1915, manifested an unmistakable intent by these parties to subject the estate to defeasance on that account. Elyton Land Co. v. S. & N. Ala. R. R. Co., 100 Ala. 396, 405, 406, 14 South. 207; Carter v. Chaudron, 21 Ala. 72, 88–90; Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; Gray v. Blanchard, 8 Pick. (Mass.) 284–288; note, 79 Am. St. Rep. 747 et seq. "The words that the deed is made upon 'condition' that certain things shall be done or not done are often decisive in determining that a conditional estate has been created." 2 Devlin on Deeds (3d Ed.) p. 1815; Gray v. Blanchard, supra; Langley v. Chapin, 134 Mass. 82. In construing a deed wherein terms were used very like those under consideration in the conveyance of March 27, 1912, it was said in Gray v. Blanchard, supra:

"The words are apt to create a condition; there is no ambiguity, no room for construction; and they cannot be distorted so as to convey a different sense from that which was palpably the intent of the parties. The word 'provided,' alone, may constitute a condition; but here the very term is used which is often implied from the use of other terms. 'This conveyance is upon the condition' can mean nothing more nor less than their natural import; and we cannot help the folly of parties who consent to take estates upon onerous conditions, by converting conditions into covenants. It would be quite as well to say that the words mean nothing, and so ought to be rejected altogether."

This court, in Carter v. Chaudron, supra, approvingly appropriated the following from the first volume of Touchstone:

"Conditions annexed to estates are sometimes so placed and confounded amongst covenants, sometimes so ambiguously drawn, and at all times have in their drawing so much affinity with limitations, that it is hard to discern and distinguish them. Know, therefore [says the author], that, for the most part, conditions have conditional words in their frontispiece, and do begin therewith; and that amongst these words there are three that are most proper, which, in and of their own efficacy, without any addition of other words of re-entry in the conclusion of the condition, do make the estate conditional, as proviso, ita quod, and sub conditione; and therefore, if A. grant lands to B., to have and to hold to him and his heirs, provided that, or so as, or under this condition, that B. do pay to A. ten pounds at Easter next, this is a good condition, and the estate is conditional, without any more words."

Since this court had finally accepted, before the execution of the conveyance of March 27, 1912, the view that a mere limitation upon the time to cut and remove the timber conveyed was a covenant, and not a condition [Zimmerman Mfg. Co. v. Daffin, supra; Mt. Vernon Lumber Co. v. Shepard, 180 Ala. 148, 60 South. 825; West v. Maddox, 193 Ala. 612, 69 South. 101], it is altogether probable that the conveyance of

200 ALA.—27

March 27, 1912, was drafted with the view to avert the effect of the rule of law established by the just-cited decisions, wherefrom it has resulted that the owner of standing timber had his title thereto preserved, notwithstanding the elapsing of the period stipulated for the removal of the standing timber was to deprive the owner of the timber of his right to enter upon the premises and remove it, and to leave the surface owner's land incumbered, as it were, with the timber owner's unavailable property right in the standing timber.

By the subsequent contract of date July 17, 1912, set out above, the Cullman Coal & Coke Company guaranteed that the timber conveyed by the deed of March 27, 1912, contained 8,000,000 feet, "actual measurement," log scale, Doyle rule. Anticipating the possibility that the "actual measurement" of the timber taken from the lands described in the deed of March 27, 1912, would show a less number of feet than that guaranteed by the Cullman Coal & Coke Company, these parties made the engagement set forth in the fifth paragraph of the instrument of July 17, 1912. It was stipulated that whatever shortage was shown by the actual measurement of timber taken, within the period prescribed, from the lands described in the deed of March 27, 1912, should be made up by the right given the Hitt Lumber Company to cut timber from sections 25 and 35 in township 12, range 4, at the specified price of $1.50 per 1,000 feet, but subject to the further condition that poplar logs taken from sections 25 and 35, measuring 24 inches in diameter, inside the bark, 4 feet from the ground, should be credited on the shortage at $5 per 1,000 feet, log scale, Doyle rule. In anticipation of the possibility that, under the contingencies just stated, the aggregate value of the timber taken from the lands in township 12, range 3, and in said sections 25 and 35, would be less than the consideration of $12,000 paid for the timber conveyed by the deed of March 27, 1912, the Cullman Coal & Coke Company agreed to pay the deficit in cash, with interest at 6 per cent. per annum; and, on the other hand, the Hitt Lumber Company engaged to pay to the Cullman Coal & Coke Company the amount in excess of the $12,000 that might accrue as the result of the actual operation of taking the timber from the lands at the prices stipulated in paragraph 5 of the instrument executed by these parties on July 17, 1912.

[2] It is to be noted that these parties contracted with special reference to the amount of timber standing upon the land described in the deed of March 27, 1912, and with specific reference to the guaranty that the standing timber would equal, *under actual measurement*, the quantity specified in the guaranty. If a shortage in the quantity of timber guaranteed had, in fact, been demonstrated by the application of the rule of ac-

tual measurement of logs cut from the land described in the deed of March 27, 1912, the parties themselves, by their subsequent contract provided the exclusive method for determining the fact of such shortage and the means and measure of their obligations with respect thereto. Under these circumstances, it is not possible to accord relief to the Hitt Lumber Company because of the asserted false representations as to the quantity of standing timber on the lands described in the deed of March 27, 1912; and this aside from the fact that the evidence does not justify the conclusion that the Hitt Lumber Company sustained its burden of proof to establish false representations by the Cullman Coal & Coke Company, inducing the dealing culminating in the deed of March 27, 1912. These considerations lead, inescapably, to a denial of the Hitt Lumber Company's right to a rescission set forth in the paragraph numbered 2 of its letter dated May 26, 1914, set forth above.

In view of the engagement set forth in the instrument of July 17, 1912, and of the evidence bearing on the issues to be indicated, it is quite clear that the Hitt Lumber Company did not sustain its obligation in the proof to support its assertion of false representation as to either the percentage the yellow pine on the land bore to the whole amount of white oak, poplar, red oak, and ash, as set forth in the third paragraph of the letter mentioned, or that the timber on said land was of such quality as that it was worth as it stood $3 per thousand feet, as set forth in the fourth paragraph of its letter enumerating the grounds of the claim of rescission. The expression *"merchantable standing timber,"* as employed in paragraph 1 of the engagement of July 17, 1912, was but an effort to recite the subject of the conveyance of March 27, 1912, which described the property conveyed as *"standing timber."* The agreement of July 17, 1912, did not assume or purport to convey any timber in township 12, range 3; that having been effectually conveyed by the deed of March 27, 1912. The terms italicized from the instrument of July 17, 1912, certainly had no effect to enlarge the grant of all standing timber on the lands described in the deed, which was defined by the broader term "standing timber."

The evidence precludes the entertainment of the conclusion that the Cullman Coal & Coke Company made any representation to the Hitt Lumber Company, inducing the purchase of the standing timber on the land described in the deed of March 27, 1912, that the railroad of the Cullman Coal & Coke Company would be completed and in operation from bridge No. 3 on Ryan's creek, in Cullman county, to Cullman, so that the timber described in said deed could be hauled to Cullman over said road within the time allowed for its removal, and hauled at advantageous rates to the Hitt Lumber Company. The evidence on this issue has been carefully considered, as on the other issues presented by the record. Under the whole evidence it can be safely affirmed that, had so important a matter as means for the movement of this timber been within the contemplation of the parties, particularly of so great advantage to the Hitt Lumber Company in affording facilities for the removal and marketing of the timber conveyed by the deed, it would not have been left in a state of complete uncertainty, to state the status with undue favor to the Hitt Lumber Company. That the Cullman Coal & Coke Company hoped to extend the railroad through the means to be afforded by the proceeds of the sale of the bonds is doubtless true; but that the Coal & Coke Company represented that the line of railroad would be so extended as to afford facilities for the Lumber Company to remove the timber within the time allowed for its cutting and removal is not established by the evidence. The remaining ground upon which the rescission is claimed is thus set forth in the fifth paragraph of the Lumber Company's letter to the Coal & Coke Company of date May 26, 1914:

"That the Cullman Coal & Coke Company owned and had the right to sell the timber on said lands at the time of the execution of the contract; whereas, much of said timber was under mortgage and the Cullman Coal & Coke Company had no title whatever to the greater part of sections 25 and 35, township 12, range 4 west."

As has been stated, the fifth paragraph of the agreement of July 17, 1912, did not convey the legal title to the standing timber on sections 25 and 35, township 12, range 4. The purpose of the provision with reference to these sections in paragraph V was to give the Hitt Lumber Company a conditional source from which to make up the deficit, below the guaranty, of the timber actually taken from the lands described in the deed of March 27, 1912, and conferred contingently on the Hitt Lumber Company the right to take timber from sections 25 and 35 upon the actual ascertainment of the fact that the timber conveyed by the deed was below the guaranteed quantity of 8,000,000 feet. The condition under which the Hitt Lumber Company's right to take timber from sections 25 and 35 depended was not afforded by the actual demonstration that 8,000,000 feet, log scale, Doyle rule, was not available to satisfy the guaranty given by the Cullman Coal & Coke Company. This consideration would alone suffice to negative the intervention of any prejudice to the rights of the Hitt Lumber Company in respect of one phase of the false representations set forth in the above-quoted fifth paragraph of its letter claiming a rescission. If, as appears, the Lumber Company's right to take any timber from sections 25 and 35 was contingent upon the actual ascertainment of the deficiency of the timber standing on the lands described in the deed, it could not be affirmed that any

representation made with reference to the right of the Cullman Coal & Coke Company to sell the timber on sections 25 and 35 was of any prejudice to the Lumber Company. The Lumber Company assumed, under the contract of July 17, 1912, the burden and obligation of affording this condition to its right to take timber from sections 25 and 35. This condition to the existence of any right to take timber from these sections was not afforded in accordance with the plain agreement of the parties. The parties themselves having deliberately established the actual measurement of the timber taken from the lands described in the deed of March 27, 1912, as the exclusive means for determining whether the guaranty stated was satisfied by the timber actually taken therefrom, they were then and subsequently bound by the method, means and result to be thus obtained, and cannot now be heard to suggest a materially different basis or means for the ascertainment of the relative rights of the parties to the transaction. In these circumstances, it is quite clear that the false representations, with respect to sections 25 and 35, asserted in paragraph 5 of the letter claiming a rescission, were, if accepted as established by the evidence, entirely vain to justify the rescission; it (the Lumber Company) being derelict in doing that which alone could determine its right to take timber from the secondary source provided by the timber standing on the land in sections 25 and 35, township 12, range 4. It results, necessarily, that the asserted breach of the contract of July 17, 1912, because of the matters set forth in the fifth paragraph of the letter claiming a rescission with reference to the timber on or the title to sections 25 and 35, was not shown, to the end, claimed by the Lumber Company, of investing it with the right to rescind the contract, or clothing it with the right to be reimbursed through damages to be awarded.

[3] The other phase of the ground for rescission asserted in the fifth paragraph of the letter claiming rescission, viz. that there was an existing mortgage, to secure the bonds, on "all the coal in, under, and upon" the lands described in the subsequently executed deed of date March 27, 1912, along with a lien fixed upon "all the timber * * * necessary for the development, working, and mining of said coal, and the preparation of the same for market, and the removal of the same," was equally impotent to clothe the Lumber Company with the right to rescind the contract on account of a breach of the warranty borne by the deed of March 27, 1912, or because of a representation that the Coal & Coke Company had the right to sell the timber on the lands described in the deed of March 27, 1912. The substance of the question made was ruled adversely to the Lumber Company in Kennedy Cooperage Co. v. Sloss-Sheffield S. & I. Co., 137 Ala. 401, 34 South. 372. There the bill was filed by the Sloss Company against the Kennedy Company, and sought to enjoin the Kennedy Company from cutting timber from certain lands, the minerals in which, together with all necessary timber and other easements commonly termed "mineral rights," were owned by the Sloss Company, and the surface by another party, under whom the Kennedy Company claimed the timber on the lands under a contract made subsequently to the conveyance of the mineral to the Sloss Company. Upon considerations fully stated, it was decided that the reference in the deed to the timber, necessary to avail of the minerals granted by the deed, was void as a grant, but that, since the conveyance of the mineral was coupled with the right to take the timber necessary to avail of the minerals thereby granted to the grantee, the Sloss Company, the right passing to the grantee was a "profit à prendre appurtenant to the interest [i. e., mineral] conveyed," and was "in the nature of an easement appurtenant." Expressing the conclusion attained and denying the equity of the bill, the court said:

"The grantors have the title, technical and beneficial, to all interests in these lands, including the timber upon them, except the minerals and easements necessary to getting out the minerals. That which passed by the grants as to the timber was not title, but a mere right to take and use timber on the land, when the grantee comes to realize its estate by taking out the minerals. Until that time and occasion for the use by the grantee transpires, the grantors in these instruments may work their own will in respect of the timber. They may clear it off, to the end of devoting the land to agriculture, or, to this or other end, they may sell and convey the timber to third persons, as these grantors appear to have done. There is no middle ground."

The present application of the pertinent doctrine of this decision, delivered 15 years ago and unimpaired as authority in this jurisdiction, requires the conclusion that the provisions of the mortgage executed by the Cullman Coal & Coke Company, pertaining to the timber necessary to the mining of the mineral interest granted thereby, were subordinate to the absolute right of the Cullman Coal & Coke Company to subsequently sell and effectually convey to the Hitt Lumber Company all of the standing timber on the lands described in the deed of March 27, 1912. Having such absolute right to sell and convey the timber notwithstanding the investment of the trustee in the mortgage, with the easement defined with respect to the timber necessary for availing of the grant of the minerals, it is clear that the existence of this provision of the mortgage at the time of the conveyance of the timber to the Lumber Company neither breached nor offended, at any stage, any right of, or duty to, the Lumber Company that could or did clothe it with the right to rescind the contract, or with a demand or claim for damages or recompense against its grantor, the Cullman Coal & Coke Company.

It must therefore be held, in accordance

with the view prevailing in the court below, that the Hitt Lumber Company has failed to sustain its indispensable claim of the relation of a creditor to the Cullman Coal & Coke Company. The decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.