(117 So. 312)

**PIERCE DEVELOPMENT CO. v. MARTIN et al.    (8 Div. 929.)**

Supreme Court of Alabama.    May 24, 1928.

Rehearing Denied June 21, 1928.

Proctor & Snodgrass, of Scottsboro, Le Roy P. Percy, of Birmingham, and Joseph Morey, of Buffalo, N. Y., for appellant.

R. E. Smith, of Hunstville, and Daniel S. Wentworth and Henry O. Nickel, both of Chicago, Ill., for appellees.

SAYRE, J. The bill, brought by Pierce Development Company, lessor, against Martin and others, lessees, sought to restrain defendants from cutting and selling timber on 25,000 acres of land in Jackson county in alleged violation of the terms of the lease. The final decree dissolved the temporary injunction, which had restrained the further cutting and sale of timber, and dismissed the bill.

The lease was for the term of two years and one month beginning on December 1, 1924, and ending January 2, 1927, and let the land with its railroad, buildings, and all mining, lumber, and mill equipment then on the land, and as well merchantable coal, and the right to "dispose of the said coal for the sole and exclusive use and benefit of the lessees, their heirs and assigns." The lessees agreed to pay each month at a stipulated rate per ton for all coal mined and disposed of. By the same indenture the lessees acquired an option to purchase the property—chiefly valuable, it seems, for its deposits of coal—subject to a mortgage for $125,000, at and for the price of $300,000, payments to be made on January 2, 1927, and in installments thereafter. The bill was filed August 17, 1925.

The controversy in this court turns in the main upon the interpretation and effect of the fifth paragraph of the indenture in words and figures as follows:

"5. The lessees shall have the right to cut, take and use from the leased premises such timber as it may require, or desire to use for its operations on said premises, and for the improvement thereof. The lessees shall be permitted to cut and sell such timber from the lands hereinbefore described as it may deem proper, upon the condition, however, that the entire proceeds of the sale thereof, less ten per cent. (10%), shall be paid over to the lessor to be applied, first upon the payment of twenty thousand dollars ($20,000.00) due as rental hereunder on January 2d, 1926; and next, upon the payment of twenty-five thousand dollars ($25,000) due as rental hereunder on the 2d day of January, 1927, any excess to apply upon the purchase price, if the option to purchase herein contained is exercised, and if such option is not exercised, then any excess shall be additional rental."

June —, 1925, the lessees, defendants, entered into two—ostensibly two—agreements with W. L. Johnson by which, in one, they sold to Johnson 250,000 feet on the stump of poplar timber on the leased land at and for $8 per thousand feet; in the other Johnson sold, or agreed to sell, to the lessees all of the lumber sawed from logs to be cut

on the leased land at and for $32.50 per thousand feet loaded on cars at or near Holly wood.

These two contracts between the lessees and Johnson were entered into on the same day, between the same parties, and concerned the same subject-matter, viz., the disposition as between the parties thereto of 250,000 feet of timber then standing upon the land in question. It is plain enough to satisfy a wayfaring man that they are to be taken and considered as one contract for all the purposes of the litigation between the parties to this cause. The question as to them is: What effect shall be assigned to them in the determination of the controversy shown by the pleading and the evidence in this cause?

The contention on behalf of appellant is that this contract between appellees and Johnson witnessed a breach of paragraph 5 of the indenture concerning the lease and sale of the land. For one thing, it is said that it (they) constitutes a breach of the indentured contract for the reason that it undertakes to assign a mere personal license which in law was not assignable. The contract, let it be observed, provides that "the lessees shall be permitted to cut and sell such timber from the lands hereinbefore described as it may deem proper, upon the condition, however, that the entire proceeds of the sale thereof, less ten per cent. (10%), shall be applied," etc., as stipulated in the fifth paragraph. Whatever may be the rule elsewhere, in this state the grant of standing timber is the sale of an interest in land and is irrevocable. Heflin v. Bingham, 56 Ala. 566, 574, 28 Am. Rep. 776; Zimmerman Co. v. Daffin, 149 Ala. 380, 390, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; Rothchild v. Bay City Lumber Co., 139 Ala. 571, 576, 36 So. 785; Harrell v. Mason, 170 Ala. 282, 285, 54 So. 105, Ann. Cas. 1912D, 585; Smythe Lumber Co. v. Austin, 162 Ala. 110, 112, 49 So. 875; Shepard v. Mt. Vernon Co., 192 Ala. 322, 327, 68 So. 880, 15 A. L. R. 23. And even though the trees remained to be selected, still the grant was for a valuable consideration coupled with an interest in the land, and would not be revocable. Davis v. Miller-Brent Lumber Co., 151 Ala. 580, 587, 44 So. 639. As pointed out in the case last above cited, the decisions in Colbey-Hinkley Co. v. Jordan, 146 Ala. 534, 41 So. 962, and Riddle v. Brown, 20 Ala. 412, 56 Am. Dec. 202, cited to this point by appellees, were rested upon the fact that the agreements for a sale of timber there involved were not in writing, so that, under the statute of frauds, they could not operate as conveyances of an interest in land, and hence were revocable licenses only. Not so in the present case. Nor do the cases of Kennedy Stave Co. v. Sloss Sheffield Co., 137 Ala. 401, 34 So. 372; Hitt Lumber Co. v. Cullman Coal Co., 200 Ala. 415, 76 So. 347; and Shackelford Coal Co. v. Knight, 214 Ala. 419, 108 So. 247, hold to the contrary. They

hold in effect—along with other determinations not now important—that conveyances such as appear in this case create an interest in land. If they do so create an interest, they are not revocable at the mere will of the grantor. All this, however, in view of what remains to be decided, is of no consequence except as affording a definition of the terms used in the contract.

Another suggestion is that appellees, lessees, having under their indentured contract the right only "to cut and sell * * * timber * * * upon condition, however, that the entire proceeds of the sale thereof, less ten per cent., shall be paid over to the lessor," violated this provision of the contract when they entered into the contract with Johnson, and, however that may be, appellant was entitled to the entire proceeds of the sale of lumber to be applied as a credit on the rental due according to the contract. It is clear, we think, that the arrangement with Johnson amounted to nothing more nor less than a hiring of him to cut the timber and convert it into lumber for appellees—a method of handling the timber, if that were all, appellees were at liberty to adopt, for it could not in reason have been expected that appellees would in their own proper persons cut the timber. It is also clear that the written form into which the agreement with Johnson was cast, that is, its separation into two parts, was designed to give a specious appearance to the arrangement and thereby to mislead appellant. But we consider it to be of no importance whether appellees cut and sold timber, or cut timber, converted it into lumber, and then sold the lumber. In either case appellant was entitled to receive the entire proceeds to be realized by appellees less 10 per cent. Sinister purpose is attributed to appellees in making the contract with Johnson. It was sinister to this extent: Appellees having adopted an interpretation of their contract with appellant which would permit them to cut the timber, allowing appellant a fair price for his timber on the stump, and then, by converting the timber into lumber and selling it, realize a profit for which they would not need to account to appellant, concealed from appellant, as long as they could at least, the true nature and effect of their contract with Johnson, and, after the arrangement with him came to light, refused to account for more than the price of the timber on the stump. In this they breached the agreement with conscious knowledge of the fact that they were so doing. The timber was the property of appellant. So much of the indentured contract as permitted appellees to cut and sell, accounting to appellant for the proceeds, witnessed an arrangement by which appellees were allowed to achieve credits on their indebtedness for rent, or even purchase money, by disposing of the timber, reserving to themselves 10 per cent. of the amount so realized. The

stipulation was that appellees should account to appellant for the entire proceeds of the sale of the lumber, less 10 per cent. There was no sale to Johnson. Confessedly the only contract Johnson was in a position to make was one for cutting and converting the timber into lumber. And, as we have already said, that is the contract he entered into. The only sale made by lessees was the sale of the manufactured lumber to people in Chattanooga, and the proceeds of that sale were paid over to Johnson. It is of no consequence that appellees intended to allow to appellant a fair price for its timber on the stump, nor that in disposing of the manufactured lumber appellees suffered a loss. Those facts did not change the meaning of the indentured contract nor cause it to operate in the case of a loss differently from what would have been its operation in case a profit was realized. In either case appellees were to have 10 per cent. and credits on their indebtedness to appellant for the balance, and the grant of this privilege without more would authorize and require the conclusion that appellees were entitled to nothing more. There is nothing in the nature of such things, nothing in the subject-matter of the contract, nothing in the relations between the parties, nor, as we think, in the language of the contract, that would authorize the inference that appellant intended to permit appellees to realize any profit on the sale of appellant's property save and except the advantage to be had in the way of a credit on the contract and 10 per cent. The evidence goes to show that by proceeding as they did appellees hoped and expected to be able to recoup out of a sale of appellant's property an expenditure of more than $30,000, a large part of which they had made in improvements thereon while in possession thereof under an option prior to the one here involved, which first option had come to naught. The indentured contract cannot be so construed. It cannot reasonably be construed to mean that appellant intended to grant to appellees the right or privilege of denuding the land of its timber for any advantage that might thereby accrue to them outside of or in addition to the advantage stipulated; in other words, nothing appears to warrant the conclusion that appellant intended to sell its standing timber otherwise than as an adjunct and aid to the indentured contract, the lease beginning December 1, 1924. There is nothing to indicate that appellant had any such notion, and the very clear indication is that when appellees conceived that notion, they thought it well that appellant be not advised. These circumstances, in connection with the language of the indentured contract, lead us to the conclusion that the contract should be construed as meaning that, if appellees sold the timber, whether in the form of timber or lumber, they should account to appellant for the entire proceeds so realized less 10 per cent., thus affording appellees the opportunity to realize credits on rent, or purchase price in the event they exercised the option to purchase. It is fair to assume that when the option was created the parties intended, if things thereafter took the expected and normal course, that it would be exercised at the appropriate time; but the evidence goes to show that at the time of the arrangement with Johnson appellees had already determined not to exercise the option, but to recoup, pending the lease, their previous expenditures. Appellees were under no legal or moral obligation to exercise the option— otherwise it would have been no option—but they had no legal or moral right, by a specious arrangement, to exploit appellant's property for the achievement of a profit outside of and unrelated to the purposes the makers had in mind, and fairly well expressed, when they entered into the indentured contract. They were, therefore, guilty of a breach of the contract, or of waste—it makes no real difference in what terms it is characterized—when they cut appellant's timber with the preconceived purpose to account only for its value on the stump (that value being fixed by them without consulting the owner) and afterwards refused to account save for the value thus fixed. Harvey v. Beckman, 64 Misc. Rep. 395, 118 N. Y. S. 602. This conclusion we reach notwithstanding appellees' reliance upon the rule of interpretation which proceeds, as far as may be, upon the theory that "contracting parties usually engage upon rational considerations and to reasonable effects; * * * the unreasonable and irrational" are not [presumed to be] "the contractual intent" (Birmingham Water Works v. Windham, 190 Ala. 634, 637, 67 So. 424, 425); indeed, we have, to what extent we could, followed that theory in reaching the conclusion stated.

■ It is urged in brief that appellant came into court with unclean hands and for that reason should not have relief. This contention is based upon the dealings of appellant with one Douglass. This Douglass brought appellant and appellees into negotiation in the first place. It may be conceded, though we think it hardly appears in evidence, that from appellant he received a commission of 5 per cent. for bringing about the first option sale to appellees, the sale which came to naught. He was also busy about negotiating the option sale, the sale, or lease with an option to purchase, under which appellees now claim. The purchasers had an arrangement by which they were to form a corporation in which Douglass was to have a one-sixth interest. By his associates he was appointed general manager and superintendent to take charge of the rehabilitation of the property and entered upon the discharge of his duties as such—this, no doubt, for the reason that he alone lived near the property and knew more about it than any one else. His ac-

count of the trouble between himself and the other defendants—he is a party defendant, though, as to that, it must be conceded that he is a nominal party only—is that he refused to cut timber, as they had a right to do, because the 10 per cent. which they had a right to reserve would not defray the expense, and that, on account of differences thus put on foot his copartners ousted him from his place as superintendent and general manager and sought to keep from him knowledge of their contract with Johnson. He further deposed that when he and defendant Martin went to Buffalo, N. Y., to close the last trade for the land, it was, with Martin's concurrence, agreed that he (Douglass) should keep Dr. Pierce, who was and is at the head of the appellant development company, informed of what was being done with the property, and the subsequent correspondence between Martin and Morey, appellant's attorney in New York who had been consulted by Pierce at every step, clearly shows that there was no secrecy about his (Douglass') communications with Pierce or his attorney. Fair dealing between the parties to this cause required that appellant should have information of the facts even though that information armed appellant with the right to avoid the contract and lease. We do not see that appellant's conduct in keeping itself informed by and through Douglass, whether the latter was actuated by a sense of duty under the contract or by ill will arising out of his quarrel with his copartners, so soiled appellant's hands that it should on that account be denied relief in equity. The court will not make its interference to depend upon the character and conduct of the moving party which in no way affected the equitable right which he asserts against the defendant or the relief which he demands. 1 Pom. Eq. Jur. (4th Ed.) p. 741, § 399. Whatever may be said of Douglass—we intend no reflection on him —it cannot, we think, be said of appellant that it proceeded in an improper way to get the truth or that its relief is sought upon anything but the facts of the case, and therefore our judgment is that the maxim, "He who comes into equity must come with clean hands," cannot in the circumstances of this cause operate to deprive appellant of relief.

Something is said in appellees' brief of the fact that appellees expended more than $30,000 in the rehabilitation of the property—which evidently had been prepared for the mining of coal prior to any contract between these parties—the inference, apparently, being that appellant waited until this money had been spent upon the property and then, to get the uncompensated advantage of this expenditure, took advantage of an opportunity to cancel the lease. But this expenditure, in large part at least, was made under the option preceding the lease now in controversy, and, in any event, the record shows that de-

faults were excused and extensions granted from time to time which were wholly inconsistent with the theory that appellant awaited the expenditure under either the present or the previous contract and then sought an opportunity to declare an unconscionable forfeiture under the terms of the lease. Upon the whole case we are led to infer—though the equity of appellant's bill in no wise depends upon the inference—that the property is of no great value for coal mining, and that appellant would be willing to dispose of the property at the agreed price, but that, if the property is ultimately to fall back into its hands, it is averse to having it denuded of its timber in the meantime.

The contract in terms armed appellant with the right to terminate the lease "in case default be made in the due performance or observance of any covenant or agreement on the part of the lessees," by giving 10 days' notice, and thereupon at the expiration of said 10 days, the lease, and the term granted, "and all right, title and estate of the lessees hereunder, shall thereupon cease and terminate in the same manner, and with the same effect, as upon the expiration of the original term of the lease," with the right forthwith to enter upon the property. Paragraph 10 of the contract. Notice in pursuance of the contract was given prior to the filing of the bill in this cause. The decree dissolving the injunction and dismissing the bill was error.

Reversed and remanded.

THOMAS, GARDNER, and BOULDIN, JJ., concur.