164 So. 745

IRWIN v. BAGGETT et al.

1 Div. 885.

Supreme Court of Alabama.

Dec. 19, 1935.

Beebe & Hall, of Bay Minette, for appellees.

Hybart & Chason, of Bay Minette, for appellant.

THOMAS, Justice.

The cause was submitted upon appellees' motion to dissolve an injunction restraining them from interfering with complainant's alleged right to cup and mark certain trees under a turpentine lease of lands, and from the decree of the circuit court dissolving the injunction this appeal was taken.

■ The lease in question is exhibited as an aid to defendants' pleading. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90. When the whole of the instrument is considered, it was a lease rather than a warranty deed. Burton Steverson, 206 Ala. 508, 91 So. 74. Such is its effect when interpreted in the light of the circumstances surrounding the parties and the object in view when the lease was executed and delivered, as parties are presumed to intend to make a reasonable and rational contract. Porter v. Henderson, 203 Ala. 312, 82 So. 668; Russell v. Garrett, 208 Ala. 92, 95, 93 So. 711; King v. Coffee et al., 222 Ala. 245, 131 So. 792.

■■ Many of the rules that are pertinent, and to be applied in the construction of ambiguous clauses in conveyances, leases, and other written contracts, are collected in Lowery v. May, 213 Ala. 66, 104 So. 5. They are aids in ascertaining the expressed intention of the parties; the general rule being to construe the lease according to the parties' intention as gathered from the whole instrument, and, if the language is not clear, the circumstances attending its execution and the subsequent acts of the parties. Greenwood et al. v. Bennett, 208 Ala. 680, 95 So. 159. If not contrary to law, this intention, when so ascertained, is to be given application; and, if a deed is found to bear on its face evidence that the draftsman was unskilled in drawing such instrument, greater latitude of construction must be indulged than in cases where the instrument appears to have been skillfully drawn by one acquainted with the force and meaning of the technical expressions employed. Porter v. Henderson, supra; Clark v. Cammack, 216 Ala. 346, 113 So. 270; Lowery v. May, supra; Gamble et al. v. Gamble, 200 Ala. 176, 75 So. 924. In Allumns v. Allumns, 208 Ala. 369, 370, 94 So. 296, 297, it was observed in this connection that: "It is a well-recognized rule that each word shall be presumed to be used for some purpose, and shall be deemed to have some force and effect. Chattahoochie & Gulf R. Co.

v. Pilcher, 163 Ala. 401, 51 So. 11. And in Head v. Hunnicutt, 172 Ala. 48, 55 So. 161, it was pointed out that if two clauses of a deed are entirely inconsistent and irreconcilable with each other, the latter must give way to the former, but if the words of the latter clause are of doubtful import, they will not be construed so as to contradict the certain words of a preceding clause."

■ It should be further noted that in construing instruments containing contradictory or ambiguous clauses, the first expression of the intention of the parties will govern, unless the intention to thereafter qualify is plainly expressed; and that where the subsequent clause is of doubtful import, it will not be held to contradict the preceding or more certain clause. McCombs v. Stephenson et al., 154 Ala. 109, 44 So. 867; Robertson et al. v. Robertson et al., 191 Ala. 297, 298, 68 So. 52; Cobbs v. Union Naval Stores Co., 202 Ala. 333, 80 So. 415; Turk v. Turk et al., 206 Ala. 312, 89 So. 457.

We set out the pertinent clauses of the lease to be as follows:

"That said first party (Thomas L. Baggett and Alice Baggett), for and in consideration of the sum of one ($1.00) Dollar, in hand, paid by the second party (S. J. Irwin and A. A. Irwin), the receipt of which is hereby acknowledged, and for the further consideration of 16 cts. per cup, to be paid as follows, to-wit: $400.00 cash, the receipt of same being hereby acknowledged, and balance of amount at 16 cts. per cup to be paid in Jan. 1930, has granted, bargained, conveyed, demised, sold and leased, to the second party, their heirs, executors and assigns all the growing pine trees for turpentine purposes now upon the following described lands, to-wit: (describing the lands). * * *

"To have and to hold, cup, work, and otherwise use, said timber for turpentine purposes unto the said second party, their heirs, successors, and assigns; it being expressly covenanted and agreed that the said second party (1) *may commence cupping, working and otherwise using for turpentine purposes, said timber they may desire, or their business may acquire, not later than January 1930, and continue to cup, work and otherwise use the same, for the full term of four years,* beginning from January 1930, and (2) shall continue to operate *until all the timber and each and*

*every part thereof has been cupped, worked and otherwise used,* for the full period of four years, *from the winter during which the cups are hung and until all the turpentine, scrape and dip have been gathered from the fourth working."* (Italics and numbers supplied.)

It will be observed that the lease made on August 9, 1929, did not require the grantees to commence working all of the timber on the lands on or prior to January, 1930; but that they commence cupping, working, and otherwise using for turpentine purposes the timber "they may desire, or their business may acquire, not later than January 1930"; and having commenced to work, to "continue to *cup, work and otherwise use* the same, for the full term of four years * * * until all the timber and each and every part thereof has been cupped, worked and otherwise used, for the full period of four years." What, then, was the ultimate period for such operation, as expressed in the contract, and under the contemporaneous construction thereof by the parties? It is insisted the contract answers: *"from the winter during which the cups are hung and until all the turpentine, scrape and dip have been gathered from the fourth working."* This presupposes, or in fact requires, a reasonable prosecution of that work within the prescribed time and under the circumstances incident to the prosecution of that business.. Lowery v. May, 213 Ala. 66, 104 So. 5. There is no insistence that the work having begun under the lease, was not duly and continuously prosecuted. Does the contract declare the intention of the parties to fix the time or duration of operation thereunder until all of the timber and each and every part thereof has been cupped, worked, and otherwise used, *for the full period of four years from the winter during which the cups are hung* and until all the turpentine, scrape, and dip *"have been gathered from the fourth working"?* Thus the two clauses we have set out are ambiguous and open to contemporaneous construction by the parties. (Italics supplied.)

Is this expression of intent of the parties, as to the duration of the operation, manifested by the language employed in the contract and changed by the rule of practical construction contemporaneously put upon the two clauses in question by the parties? Alabama Great Southern Railroad Co. v. Hawk, 72 Ala. 112, 117, 47 Am.Rep. 403; Roan v. State, 225 Ala. 428, 143 So. 454; Vol. 2, Words and Phrases, First Series p. 1489. The rule is thus stated in Montgomery Enterprises et al. v. Empire Theater Co., 204 Ala. 566, 572, 86 So. 880, 885, 19 A.L.R. 987:

"If a contract is of doubtful import as to any of its provisions, the practical construction put by the parties on such engagement therein is controlling of its meaning and must 'often prevail over its literal meaning.' * * * In Comer v. Bankhead, 70 Ala. 136, 141, Mr. Justice Stone states Parsons' simple rules for the construction of contracts:

" 'It is a rule that the whole contract should be considered in determining the meaning of any or all its parts.' 2 Parsons on Contr. 13.

" 'The contract should be supported, rather than defeated.' Page 15.

" 'All the parts of the contract will be construed in such a way as to give force and validity to all of them, and to all of the language used, where that is possible.' Page 16.

" 'All instruments. should be construed contra proferentem; that is, against him who gives, or undertakes, or enters into an obligation.' Page 19."

See, also, Schowalter v. Schowalter et al., 221 Ala. 364, 367, 128 So. 458, 460, and Central Lumber Co. et al. v. Schilleci et al., 227 Ala. 29, 148 So. 614. In the Schowalter Case the authorities are collected to the effect that "courts exercise caution in considering evidence as to declarations [and actions] of a grantor [parties] * * * as to ambiguous" clauses; but when the contemporaneous interpretation of the parties of an ambiguous word or clause *is ascertained,* it will be accepted and applied. It is to be observed of this rule that the acts and declarations of *both* parties to a common end and understanding, as to the meaning of an ambiguous clause, govern, and not those of only *one* of the parties to the contract.

The submission on the motion to dissolve complainant's temporary injunction was upon the pleading noted, and affidavits on file, and when they are carefully considered, it is evident that there was a practical construction of the contract by the parties, respectively, as to the time or duration of the contract and the turpentine rights •given and secured

thereunder, for and within the four year period; that the construction placed thereon by the parties was for the full term of four years, to begin in January, 1930, and not longer. It is shown without question that the grantees sought an extension of that time and failed to so secure; that the grantors in declining the extension advised that at the end of the time the grantees would have to move off the lands. Acting on such notice, the grantees moved their cups from the instant lands to other lands of the grantees.

There was no error in the ruling of the trial court dissolving the complainant's injunction. The judgment of the circuit court is therefore affirmed.

Affirmed.

BOULDIN, BROWN, and KNIGHT, JJ., concur.