113 So.2d 512

**W. A. COTNEY**

v.

**A. D. EASON.**

5 Div. 707.

Supreme Court of Alabama.

June 25, 1959.

Cocke & King, Alexander City, for appellant.

Wm. I. Byrd, Alexander City, and Sam W. Oliver, Dadeville, for appellee.

MERRILL, Justice.

Appellee Eason filed an action for a declaratory judgment to construe the will of A. L. Adams, deceased, and to declare appellee the owner of certain property which he had purchased from the widow and heirs of A. L. Adams.

The respondents were Lillian R. Beasley, a stepdaughter of A. L. Adams, and appellant Cotney, to whom Lillian R. Beasley had sold a life interest devised to her in certain lands by the will of A. L. Adams, deceased. A decree pro confesso was entered against Lillian R. Beasley.

All of A. L. Adams' property was left to his wife and children, except a life estate devised to Lillian R. Beasley, in the following language:

"I also bequeath to my stepdaughter, my entire farm, consisting of 180 acres, more or less (here follows description); she to have the lands and profits and use of said lands for and during her natural life, but if she shall sell or undertake to sell, or mortgage or undertake to mortgage or create any lien of any kind on said lands, then her right to and all of her interest in said lands shall terminate and the same shall vest in my estate; at the death of said Lillian Barnett the title to said lands to vest in my estate and to be divided as provided by law among my legal heirs."

It is stipulated that the widow dissented from the will and became entitled to dower

and homestead, and it is also stipulated that through mesne conveyances the appellee, A. D. Eason, purchased whatever right, title and interest the widow and children of A. L. Adams, deceased, obtained under the will of A. L. Adams and the dissent of the widow.

A. L. Adams died in 1920 and his will was duly admitted to probate. In 1942, Lillian Beasley deeded her life estate to appellant Cotney, who went into possession but did not record his deed until 1957. It was stipulated that appellant had regularly assessed and paid taxes on a part of the lands, known as the Slaughter place, since 1942, and that appellee and his predecessors in title had regularly assessed and paid taxes on the other part of the lands since the death of A. L. Adams.

Both appellant and appellee agree that the case was tried in the lower court on two issues, which they pose in the form of questions:

"1. Did the conveyance by Lillian R. Beasley to W. A. Cotney of her life interest in all of the lands described in the Bill of Complaint work a forfeiture of such interest with the result that the interest of Lillian R. Beasley in all of said lands vested immediately in the heirs at law of A. L. Adams, deceased, and in A. D. Eason who has succeeded to all of the right, title and interest of the heirs at law of said decedent?

"2. Has W. A. Cotney acquired title by adverse possession to those lands described in the Bill of Complaint as Fractions A & B in the Northeast quarter of Section 14, Township 23 North, Range 23, known as the Slaughter place?"

The trial court found in favor of appellee, the effect of the decree being to answer the first question in the affirmative, and number two in the negative.

■ Appellant contends that the conveyance from Beasley to Cotney did not work a forfeiture, or even if it did, appellant had a fee-simple title to the Slaughter place by adverse possession.

The authorities support the following statements found in 160 A.L.R. 640 II:

"The general rules can be stated as follows:

"(1) A provision in a deed or will conveying or devising a legal life estate by which the life tenant is forbidden to transfer or encumber, voluntarily, his life estate, is void.

"(2) However, where such provision is followed by a limitation over or a provision for cesser or forfeiture to take effect upon the voluntary alienation of the life estate, the restraint on alienation becomes effective, and upon the happening of the contingency the life estate terminates or passes to someone else."

In addition to the eight text books there cited, see 2 Powell on Real Property, § 208; 33 Am.Jur., Life Estates, § 43; 96 C.J.S. Wills § 980(b).

■ The great weight of authority supports the view that a limitation over or provision for cesser or forfeiture in a devise or conveyance of a legal life estate, to take effect upon voluntary alienation, is valid and effective where, upon the happening of such contingency, the life estate terminates or passes to someone else, and the life tenant ceases to enjoy the same. 160 A.L.R. 655 IV; Am.Law Inst. Restatement, Property, Vol. 4, § 409. In Camp v. Cleary, 76 Va. 140, the court, speaking of a legal life estate, said:

"'It seems, however, to be clear that there is nothing in the law that prevents one man from limiting an estate to another until he alien it or attempt to alien it, or until he become bankrupt or insolvent, and if and as soon as he aliens or attempts to alien, or becomes bankrupt or insolvent, that his estate shall cease and go to another. This is what is called, in techni-

cal language, a conditional limitation, which is possible under the statutes of uses and devises. In such case the happening of the contemplated contingency ipso facto determines the estate of the first taker and vests it in the other to whom it is limited.' "

Our case of Libby v. Winston, 207 Ala. 681, 93 So. 631, 632, in holding certain conditions in a deed valid, quotes the following from Gray v. Blanchard, 8 Pick., Mass., 284, with approval:

" 'Every proprietor of an estate has jus disponendi (the right of disposing). He may grant it with or without condition; and if he grants it upon condition directly, the estate of the grantee will terminate with the breach of the condition, if the grantor chooses to avail himself of the forfeiture and enter for the breach.' "

This court further said: "The grantor's intent to convey a defeasible estate only is clear and unequivocal. His language leaves no doubt of his purpose in that respect."

In H. H. Hitt Lumber Co. v. Cullman Coal & Coke Co., 200 Ala. 415, 76 So. 347, 348, it was said that a condition in a deed to standing timber was not void where "the intent of the grantor to make a conditional estate is otherwise clearly and unequivocably indicated."

It is "clear and unequivocal" that A. L. Adams intended that Lillian R. Beasley hold the life estate subject to the condition that she should not voluntarily convey it. It is undisputed that she did attempt to convey it to appellant in 1942. Under the authorities cited supra, we hold that this conveyance· worked a forfeiture of the life estate interest of Lillian R. Beasley in the lands, and such interest was vested in the heirs at law of A. L. Adams and their successors in title.

■ Appellant's claim of adverse possession to the Slaughter place must be denied. True, he has been in possession since 1942 and has paid the taxes since that time as prescribed by Tit. 7, § 828, Code 1940. But the element of hostility ·of his claim or possession is absent. The conveyance under which he went into possession purported to convey only a life estate. But the conveyance was not recorded until 1957.

Appellant testified that it was his intention to claim only a life estate, that he recognized the fee-simple title of those holding under the A. L. Adams' heirs, and that he "didn't notify anybody" of his adverse claim.

"The ten-year statute of limitations as to real actions and the statute of adverse possession are to the same end and purpose," Drummond v. Drummond, 232 Ala. 401, 168 So. 428, 430; or to express it another way—adverse possession is based upon the running of the statute of limitation of ten years.

■ The statute of limitation never runs against the remainderman or reversioner during the existence of the life estate for the reason that no cause or compelling right of action is in the remainderman or reversioner, nor can there be any adverse possession to him. Bishop v. Johnson, 242 Ala. 551, 7 So.2d 281.

■ A remainderman not in possession is under no duty to maintain a bill to remove a cloud from his remainder estate pending a life estate, but there are circumstances which require him to act pending the particular estate in order that he may escape the charge of laches. Ward v. Chambless, 238 Ala. 165, 189 So. 890; Teal v. Mixon, 233 Ala. 23, 169 So. 477. "A person cannot be said to be guilty of laches until he has knowledge of the facts which entitles him to relief and thereafter manifests a want of diligence in asserting his rights," Hagood v. Knight, 257 Ala. 64, 57 So.2d 616, 618; or unless he has knowledge of his rights or the claim of the opposing party or was possessed of such information as would put a person of ordi-

nary prudence and diligence on inquiry which, if followed up, would reasonably lead to discovery of the situation. Pittman v. Pittman, 247 Ala. 458, 25 So.2d 26.

In our recent case of Stewart v. Childress, Ala., 111 So.2d 8, 12, we said:

"* * * We quote the applicable rule from the case of Dothard v. Denson, 72 Ala. 541:

" 'The mere possession of land is not prima facie adverse to the title of the true owner. All presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile, but rather in subordination to it. * * * But, though this presumption attaches to the possession—that it is an occupancy by right—the presumption disappears in the presence of the title. When the title is shown not to attend the possession, but that it resides in another, the law, not favoring wrong, will not presume that the possession was taken, or is held and claimed, in hostility to the title. The burden of proving the possession adverse—that it was taken and held under a claim of title hostile to the title of the true owner—rests upon the party asserting it. [Cases cited.]'

"This principle was reaffirmed in White v. Williams, 260 Ala. 182, 69 So.2d 847. This last cited case also gave expression to the principle that a permissive possession does not ripen into title unless there has been such a repudiation of the permissive possession as to afford notice of an adverse claim. In further illucidating the principle it was also held: Limitations begin to run from the date of notice of hostility but are not operative before hostility is shown, and whether the possession was with the intention of claiming title is generally held to be a question of fact; a permissive occupant cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile."

Here, the life estate in Lillian R. Beasley terminated when she attempted to convey it to appellant, but the undisputed evidence is that no notice of this conveyance came to the remaindermen. They knew that the will gave Lillian R. Beasley the life estate; she had a right to rent the premises; she or her tenant was responsible for the payment of the taxes; appellant gave no notice that he was claiming adversely; he recognized the fee-simple title in appellee or his predecessors; and he did not record his deed until he had made an oral claim for the first time in 1957. The evidence is overwhelming that appellee's predecessors in title had no notice that appellant was claiming the life estate interest until 1957. The instant suit was filed July 10, 1958.

It follows that appellant's claim of title by adverse possession cannot avail because it was neither hostile nor adverse for the statutory period.

The decree of the lower court is affirmed.

Affirmed.

LAWSON, STAKELY and GOODWYN, JJ., concur.