THOMAS, Judge.
Anita Rearick appeals a judgment of the Coffee Circuit Court (“the trial court”) in favor of Immanuel Sieving and Jeri Sieving.
The record indicates the following. Rearick and the Sievings were coterminous landowners of property located in Coffee County. In May 2007, Rearick contacted the Sievings and offered to sell them the property on which she lived (“the property”) for $50,000. The Sievings accepted her offer. At some point well before the occurrence of the events leading up to this action, Rearick had sold the property to her daughter, Hope Zonca. However, Rearick had continued to live on the property, and it is undisputed that Rearick was Zonca’s attorney-in-fact for the purpose of conducting the real-estate transaction giving rise to this litigation.
On or about July 31, 2007, Rearick and the Sievings met in the office of Marty Williams, a real-estate attorney, to close the real-estate transaction. The parties and Williams testified at trial that Rearick was very emotional at the closing, because she had lived in the mobile home on the property for a long period. After the parties signed the deed transferring the property in fee simple from Zonca to the Siev-ings, the Sievings instructed Williams to draft an agreement allowing Rearick to continue living on the property. The separate document drafted by Williams, entitled “Agreement” (“the agreement”), stated, in pertinent part:
“We the undersigned, do hereby agree to allow Anita M. Rearick to live in the present residence on the following described property for the rest of her natural life. This agreement shall be binding on Immanuel C. Sieving and Jeri B. Sieving and their heirs and assigns. Anita M. Rearick agrees to maintain the residence in its current condition.”
A description of the property and the signatures of all of the parties followed the above statement. The agreement was recorded in the Coffee County probate office.
All parties acknowledge that Rearick often visited her adult children for extended periods. The Sievings testified that approximately one month after the parties signed the agreement, they learned that Rearick had allowed members of her family (“the family members”) to reside in the mobile home. The Sievings further testified that they believed that allowing the family members to do so violated the agreement and that they sought to collect rent from the family members. They testified to other occurrences that they also believed violated the agreement, such as allowing a pet to live inside the mobile home and parking an 18-wheel transfer truck in the yard.
The Sievings testified that at some point they received a letter from an attorney stating that, because Rearick possessed a life-estate interest in the property, she could allow other individuals to live in the mobile home. The Sievings contend that they never intended the agreement to convey a life estate to Rearick. In fact, they testified, they had never heard of a life estate before receiving the letter from Rearick’s attorney.
*818 The Sievings further testified that they sent a letter to Rearick in March 2010 stating that she had breached the agreement and giving her 30 days to vacate the property. Rearick then contacted the Sievings’ attorney, who told her that the Sievings would work with her if additional time was needed. However, the Sievings testified that one of Rearick’s adult children contacted the Sievings’ attorney two to three days after Rearick received the letter. According to the Sievings, Rear-ick’s adult child left a voice-mail message for the Sievings’ attorney, which the Siev-ings characterized as irate. The voice-mail message from Rearick’s adult child allegedly stated that Rearick was not moving. At that point, the Sievings testified, they decided to file the underlying complaint in the trial court.
Rearick also testified at trial She testified that she had asked the Sievings if she could continue to live on the property when she made the offer to sell them the property. According to her testimony, she and the Sievings had agreed, before the real-estate closing, that she could remain on the property. Rearick acknowledged at trial that she did not compensate the Siev-ings for her continued residence on the property, nor was the value of her retaining a life estate negotiated into the price the Sievings paid for the property.
Williams testified that she had drafted the agreement during the real-estate closing. She further testified that no party requested that she draft a document creating a life estate. Instead, she stated that the Sievings had asked her to draft a document allowing Rearick to live on the property for the rest of her life. Williams further testified that she had specifically intended to draft the agreement in such a manner that it would not be interpreted as creating a life estate.
On October 13, 2010, the Sievings filed the complaint asking the trial court to terminate the agreement and to direct Rearick to vacate the property. Rearick answered the Sievings’ complaint on December 8, 2010. A bench trial was held on June 22, 2011, at which the trial court heard evidence ore tenus. On November 10, 2011, the trial court entered a judgment in favor of the Sievings. The judgment, in pertinent part, terminated the agreement, restored possession of the property to the Sievings, and ordered Rearick to vacate the property in no more than 30 days.
Rearick filed a timely post-judgment motion; she also filed a motion to stay enforcement of the judgment pending a hearing. The trial court granted the motion to stay. The Rearicks filed a response to the postjudgment motion on January 12, 2012. A hearing was held on the postjudgment motion on January 17, 2012. The trial court entered an order on that same day denying the postjudgment motion and setting aside the order staying enforcement of the judgment. Rearick filed a timely appeal with this court on January 25, 2012.
“ ‘ “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judg *819 ment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[u]nder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support [it] carry a presumption of correctness.’ Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala. 1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’ Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (‘[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).” ’
“[Farmers Insurance Co. v. Price-Williams Assocs., Inc.,] 873 So.2d [252,] 254-55 [ (Ala.Civ.App.2003) ] (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).”
Kellis v. Estate of Schnatz, 983 So.2d 408, 412 (Ala.Civ.App.2007).
On appeal, Rearick asserts that the trial court exceeded its discretion by: (1) considering parol evidence when interpreting the agreement, (2) terminating the agreement and restoring the property to the Sievings, and (3) determining that the agreement did not convey a life estate.
The trial court determined that the agreement created a revocable license, as opposed to a life estate. The judgment of the trial court provided, in pertinent part:
“In consideration of the foregoing and all other relevant matters presented, the Agreement of the parties can be considered only a real property license which conveyed unto [Rearick] a personal privilege to live in the residence located on the subject property during her lifetime. That license was not coupled with an interest in the land and is therefore revocable by [the Sievings] at their sole discretion. The [Sievings], in exercising such discretion, have expressed their desire to revoke the license or otherwise annul the Agreement.”
We must first determine if the trial court erred by considering parol evidence when interpreting the agreement. Rear-ick argues in her brief that “[t]he plain language of the ‘Agreement’ is consistent with the definition of a life estate.” We agree that “for the rest of her natural life” is language often indicating the conveyance of a life estate. See generally Barnett v. Estate of Anderson, 966 So.2d 915, 919 (Ala.2007) (holding that the language “ ‘shall not be sold during the terms of [the daughters’] natural lives and twenty-one years thereafter’ ” (emphasis omitted), coupled with a provision establishing a remainder interest, was sufficient to create a life estate); see also Restatement (First) of Property § 107, Comment e. (1936)(“The requirement of the rule stated in this Section that the conveyance measure the duration of the created estate, in specific words, by the life of one or more human beings, does not require the use of any particular phrase or words of art.”). However, the phrase “[w]e ... do hereby agree to allow” is consistent with the granting of a revocable license. See Chancy v. Chancy Lake Homeowners Ass’n, 55 So.3d 287, *820 295 (Ala.Civ.App.2010) (“ ‘In contrast, “[a] license denotes the ‘giving of one’s consent’ to do or perform a specified activity ....’” ’’(quoting Blackburn v. Lefebvre, 976 So.2d 482, 490 (Ala.Civ.App.2007), quoting in turn other cases)).
Our research does not yield any Alabama caselaw directly addressing whether an agreement to allow a person to live on real property for his or her natural life creates a life estate or a license. However, this court’s prior analysis as to the proper interpretation of agreements creating licenses or easements is instructive.
“ ‘First, “ ‘[t]he construction of a written document is a function of the court.’ ” Jehle-Slauson Constr. Co. v. Hood-Rich, Architects & Consulting Eng’rs, 435 So.2d 716, 720 (Ala.1983) (quoting Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1194 (Ala. 1978)). “In the absence of fraud or mistake, it is only where the instrument is doubtful of meaning, or its language ambiguous, that the court may look beyond the four comers’ of the instrument to give clarity and specificity of meaning.” Camp v. Milam, 291 Ala. 12, 16-17, 277 So.2d 95, 98 (1973); see also David Lee Boykin Family Trust v. Boykin, 661 So.2d 245, 251 (Ala.Civ.App.1995) (“The substantive rules governing licenses are the same as those governing contracts.”).
“ ‘The critical factor in determining whether parties created an easement or a license is the parties’ intent. James v. Brewster, 954 So.2d 594, 600 (Ala.Civ.App.2006) (citing Boyce v. Cassese, 941 So.2d 932, 941 (Ala.2006)). In determining whether the parties created an easement or a license, we also look to the surrounding circumstances. See Drummond Co. v. Walter Indus., Inc., 962 So.2d 753 (Ala.2006) (citing Jon W. Bruce and James W. Ely, Jr., The Law of Easements & Licenses § 11:1 (West 2001)).’ ”
Chancy, 55 So.3d at 295 (quoting Blackburn v. Lefebvre, 976 So.2d at 489)(emphasis added).
Rearick cites Slaten v. Loyd, 282 Ala. 485, 213 So.2d 219 (1968), in support of her assertion that the trial court exceeded its discretion by considering parol evidence when interpreting the agreement. In Slaten, the grantors conveyed separate parcels of property to their son and to their daughter by two separate deeds containing similar granting clauses and habendum clauses. 282 Ala. at 486-87, 213 So.2d at 219-20. The issue in Slaten was whether the subsequent conduct of the grantors regarding the deed to the son could be considered in determining the estate conveyed in the deed to the daughter. Id.
The appellants in Slaten asserted that the trial court had erred by considering the subsequent conduct of the grantors in determining the intent of the conveyances, citing a statute and caselaw in support of their position. 282 Ala. at 488, 213 So.2d at 221. In answer, our supreme court stated that, “ ‘[w]here a deed is ambiguous, subsequent acts of the parties, showing the construction they put on the instrument, are entitled to great weight in determining what the parties intended, and such construction may be deemed the true one, unless the contrary is shown.’ ” 282 Ala. at 488, 213 So.2d at 221 (quoting 26 C.J.S. Deeds § 93). The supreme court further quoted Irwin v. Baggett, 231 Ala. 324, 326, 164 So. 745, 746 (1935):
“ ‘Many of the rules that are pertinent, and to be applied in the construction of ambiguous clauses in conveyances, leases, and other written contracts, are collected in Lowery v. May, 213 Ala. 66, 104 So. 5 [ (1925) ]. They are aids in ascertaining the expressed intention of the parties; the *821 general rule being to construe the lease according to the parties’ intention as gathered from the whole instrument, and, if the language is not clear, the circumstances attending its execution and the subsequent acts of the parties.’ ”
Id. (emphasis added).
In its holding the Slaten court “agree[d] with the conclusion of the trial court that subsequent conduct of the grantor and grantee in the deed to [the grantee] was properly considered and indicated the intent of both parties to the deed and the quit claim indicated a fee simple title.” Id.
Although we agree that Slaten is indeed instructive in the present case, we disagree that it supports Rearick’s arguments. Slaten supports the trial court’s decision to consider the “‘circumstances attending [the agreement’s] execution and the subsequent acts of the parties’” in order to construe the agreement. 282 Ala. at 488, 213 So.2d at 221 (quoting Irwin v. Baggett, 231 Ala. at 326, 164 So. at 746). Because the language of the agreement is open to more than one interpretation, we hold that the trial court did not exceed its discretion by considering parol evidence when interpreting the agreement.
Because we have determined that the trial court did not improperly consider parol evidence, we next address whether the trial court exceeded its discretion by determining that the agreement did not create a life estate and by terminating the agreement. Black’s Law Dictionary defines a “life estate” as “[a]n estate held only for the duration of a specified person’s life, usu[ally] the possessor’s. ... See Life Tenant.” Black’s Law Dictionary 628 (9th ed.2009). A “life tenant” is defined as “[a] person who, until death, is beneficially entitled to property; the holder of a life estate.” Id. at 1011. In contrast, a “license” is defined as “[a] permission, usu[ally] revocable, to commit some act that would otherwise be unlawful; especially], an agreement (not amounting to a lease or profit a prendre) that it is lawful for the licensee to enter the li-censor’s land to do some act that would otherwise be illegal, such as hunting game.” Id. at 1002. In the agreement, the Sievings “agree[d] to allow ... Rearick to live in the present residence” on the property. This language is indicative of a revocable license.
Rearick relies on Harrell v. McMeans, 598 So.2d 957 (Ala.Civ.App.1992), to support her assertion that the trial court erred. Again, her reliance is misplaced. In Harrell, this court stated:
“Under Alabama law, every grant of an estate in lands is presumed to be in fee simple and all doubts are to be resolved in favor of this presumption. Hacker v. Carlisle, 388 So.2d 947 (Ala. 1980). An intent to create a lesser estate must be expressed in lucid, unambiguous language. Slaten v. Loyd, 282 Ala. 485, 213 So.2d 219 (1968). If possible, the intent of the parties must be ascertained from the language used in the instrument as a whole. Willis v. James, 287 Ala. 653, 254 So.2d 717 (1971). Where the granting of an estate is not made in plain language, it is for the finder of fact to determine the extent of the interest intended to be granted, and its judgment on the matter will not be reversed unless plainly and palpably wrong. Hartford Accident v. Morgan County Ass’n, 454 So.2d 960 (Ala.1984).”
Id. at 959. Rearick includes an excerpt from the quote above in her brief — “ ‘[i]f possible, the intent of the parties must be ascertained from the language used in the instrument as a whole.’ ” We agree. The *822 language in the agreement, when taken as a whole, indicates that the Sievings intended to permit Rearick to continue living in the mobile home, not to convey to her a life estate in the property.
Further, Harrell states the finder of fact will resolve any confusion as to the extent of the interest intended to be granted. 598 So.2d at 959. Rearick asked the trial court in the present case to make a determination as to the extent of the interest conveyed in the agreement. The trial court issued a judgment holding that the agreement conveyed a revocable license, and that judgment “will not be reversed unless plainly and palpably wrong.” Id.
The trial court heard testimony from all the parties and Williams, the drafter of the agreement. The Sievings testified that it was never their intent to convey a life estate to Rearick. In fact, they further testified that the decision to allow Rearick to continue living in the mobile home was made only after they witnessed her emotional state at the real-estate closing. Williams also testified that she did not draft the agreement to convey a life estate. Specifically, she testified that she drafted the agreement separately from the deed so that it would not be mistaken as creating a life estate and, therefore, potentially encumber the title to the property in the future. Based on this ore tenus evidence, in addition to the plain language of the agreement, the trial court could have determined that the Sievings did not intend to create a life estate in favor of Rearick but, rather, to grant their permission to Rearick to live in the mobile home in the form of a revocable license.
Rearick also asserts in her brief that the Sievings “just wanted to undo what had been bargained for without compensating Rearick.” We note, as did the trial court, that no consideration was given or received in connection with the agreement. “ ‘A contract, lacking in mutuality, is unenforceable, because there is an absence of consideration moving, from one party to the other....’” Northcom, Ltd. v. James, 694 So.2d 1329, 1385 (Ala.1997) (quoting Marcrum v. Embry, 291 Ala. 400, 403, 282 So.2d 49, 51 (1973)).[1] Because there was no consideration given, there was no bargain to “undo.”
Based on the ore tenus evidence presented at trial and the plain language of the agreement, we agree with the trial court in its conclusion that both the language of the agreement and the conduct of the parties indicated the intent to create a revocable license instead of a life estate. The judgment of the trial court is therefore due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. We note that Ala.Code 1975, § 35-4-34, provides, in pertinent part, that "[n]o deed or other conveyance creating or transferring any interest in land shall be invalid or ineffective because of the fact that it does not recite a good or valuable consideration or no such consideration exists or is given....” However, " ‘[d]eed’ and ‘conveyance’ in their most common legal usage refer to a transfer of title to land from one person to another.” Crowley v. Bass, 445 So.2d 902, 904 (Ala. 1984). Because the agreement did not transfer title from the Sievings to Rearick, § 35-4-34 is not applicable.