PITTMAN, Judge.
Gail Thrasher appeals from a judgment of the Montgomery Circuit Court finding her in contempt and purporting to divest her of her life estate in certain real property. We reverse and remand.
On January 6, 2010, Gail filed a petition seeking to remove the administration of the estate of William S. Thrasher, deceased (“the decedent”), from the Montgomery Probate Court to the Montgomery Circuit Court (“the trial court”); that motion was granted. On January 27, 2010, Gail filed in the trial court a complaint, asserting, among other things, that she was the surviving spouse of the decedent and that, pursuant to an antenuptial agreement entered into by her and the decedent, she was entitled to a life estate in their marital residence on Brewer Road in Montgomery. Gail attached as an exhibit to her complaint a copy of the antenuptial agreement, which provides, in pertinent part:
“(d) In the event that [the decedent] predeceases ... Gail ... the following will apply:
[[Image here]]
“(2) ... Gail ... will have a life estate to live at the Brewer Road home. She shall use the rental property proceeds to maintain the Brewer Road home.”
James Hall Thrasher, as personal representative of the decedent’s estate (“the estate”), filed an answer to Gail’s complaint. On February 5, 2010, the trial court entered an order concluding, among other things, that, pursuant to the ante-nuptial agreement, Gail had a life estate in the Brewer Road home; the trial court further stated that Gail was entitled to immediately move back into the home. That judgment was affirmed following an appeal by the personal representative of the estate to this court. See Thrasher v. Thrasher (No. 2090939, May 6, 2011), 108 So.3d 548 (Ala.Civ.App.2011) (table).
A “decree on final settlement” of the estate was entered by the trial court on March 5, 2012, confirming the settlement of the estate. That decree stated, among other things: '
“It is further ORDERED, ADJUDGED, and DECREED by the Court that Gail ... has a life estate in the Brewer Road home and she shall use the rental property proceeds to maintain the Brewer Road home, to include property taxes and insurance.”
On September 5, 2013, the decedent’s children, James Hall Thrasher (“Jim”) and Sheila Reed, who were granted a remainder interest in the property subject to the life estate granted to Gail, filed a motion for a finding of contempt, asserting, among other things, that the decree on final settlement of the estate, entered on March 5, 2012, required Gail to pay the property taxes and the insurance premiums as to the home; that, on July 9, 2013, Gail had notified the insurance company that had insured the home that the insurance maintained on the home was to be canceled effective August 1, 2013, because the property was being sold; and that Gail had abandoned the property as of August 1, 2013. Jim and Sheila argued that, based on the language of the antenuptial agree *1045 ment, Gail had forfeited her interest in the Brewer Road home as a life tenant as a result of her actions.
Gail filed a response to the contempt motion in which she asserted, among other things, that she had conveyed her life estate in the property to Clarence Thomas, who had purchased insurance on the residence; that she continued to maintain a bedroom and other furniture at the Brewer Road home; that she continued to collect rent from the tenants of the rental property; that the security-system contract at the property remained in her name; that the property taxes had been or would be paid before the énd of October 2013; and that she was not required to live on the property in order to maintain her life estate. On November 5, 2013, the trial court entered a judgment granting the contempt motion. The trial court found, among other things, that Gail had canceled the insurance on the Brewer Road home in violation of the trial court’s decree on final settlement, that the language of the ante-nuptial agreement required Gail to live in the Brewer Road home, that the words “to live” are words of limitation on Gail as a life tenant, that Gail had forfeited her life estate in the Brewer Road home because of her having canceled the insurance coverage on the Brewer Road home and having abandoned that home, and that the Brewer Road home was currently vacant and listed as a rental such that any future tenants might commit waste on the property and damage the future interest of the remaindermen. Gail timely filed a post-judgment motion; that motion was denied by the trial court, and Gail timely filed a notice of appeal. The supreme court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
Gail first argues on appeal that the trial court erred in concluding that she had forfeited her life estate in the Brewer Road home. We agree. In its final settlement of the estate, the trial court granted Gail a life estate in the Brewer Road home. A life tenant may convey a life estate, see Vidmer v. Lloyd, 193 Ala. 386, 69 So. 480 (1915), so conveying the life estate does not, itself, forfeit the life estate. See McMichael v. Craig, 105 Ala. 382, 387-88, 16 So. 883, 883 (1895) (“The contention upon which it is assailed here by the appellants, that a conveyance by the life tenant either of a nominal fee or of her estate for life, or the suffering of a disseiz-in by her, forfeits the particular estate to the remaindermen, is not and never has been the law of Alabama.”). The trial court determined that the language used in the antenuptial agreement, particularly the phrase “to live,” required Gail to live in the Brewer Road home. We disagree.
In Rearick v. Sieving, 103 So.3d 815 (Ala.Civ.App.2012), this court was called upon to determine whether an agreement allowing a party to live on certain real property created in that party a life estate or a revocable license. In that case, following the execution of a deed transferring real property, the purchasers agreed to draft an agreement allowing the seller of the property, to continue living on the property for the rest of her natural life. Id. at 817. In determining that the agreement at issue was a revocable license, this court looked to the construction and interpretation of similarly drafted documents conveying varying interests in real property for guidance. Id. at 820. This court stated, in pertinent part:
“Our research does not yield any Alabama caselaw directly addressing whether an agreement to allow a person to live on real property for his or her natural life creates a life estate or a license. However, this court’s prior analysis as to the proper interpretation *1046 of agreements creating licenses or easements is instructive.
“‘“First,‘“[t]he construction of a written document is a function of the court.”’ Jehle-Slauson Constr. Co. v. Hood-Rich, Architects & Consulting Eng’rs, 435 So.2d 716, 720 (Ala.1983) (quoting Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1194 (Ala.1978)). ‘In the absence of fraud or mistake, it is only where the instrument is doubtful of meaning, or its language ambiguous, that the court may look beyond the “four corners” of the instrument to give clarity and specificity of meaning.’ Camp v. Milam, 291 Ala. 12, 16-17, 277 So.2d 95, 98 (1973); see also David Lee Boykin Family Trust v. Boykin, 661 So.2d 245, 251 (Ala.Civ.App.1995) (‘The substantive rules governing licenses are the same as those governing contracts.’).
“‘“The critical factor in determining whether parties created an easement or a license is the parties’ intent. James v. Brewster, 954 So.2d 594, 600 (Ala.Civ.App.2006) (citing Boyce v. Cassese, 941 So.2d 932, 941 (Ala.2006)). In determining whether the parties created an easement or a license, we also look to the surrounding circumstances. See Drummond Co. v. Walter Indus., Inc., 962 So.2d 753 (Ala.2006) (citing Jon W. Bruce and James W. Ely, Jr., The Law of Easements & Licenses § 11:1 (West 2001)).”’
“Chancy [v. Chancy Lake Homeowners Ass’n], 55 So.3d [287] at 295 [(Ala.Civ.App.2010)] (quoting Blackburn v. Lefebvre, 976 So.2d [482] at 489 [(Ala.Civ.App.2007)]) (emphasis added).”
103 So.3d at 820.
In the present case, the antenuptial agreement states in express terms that Gail was to have “a life estate” in the Brewer Road home. Thus, the language of the agreement itself is clear and unambiguous that a life estate is intended. We look next to whether the phrase “to live” and the statement that Gail “shall use the rental property proceeds to maintain the Brewer Road home” are conditional limitations on the grant of the life estate. In Cotney v. Eason, 269 Ala. 354, 113 So.2d 512 (1959), our supreme court discussed whether the grant of a life estate, which included language indicating that, if the grantee of the life estate should, among other things, sell or undertake to sell the lands, then his or her right to the lands shall terminate and' vest in the grantor’s estate, resulted in a forfeiture of the life estate when the grantee attempted to sell the property. The supreme court stated, in pertinent part:
“The great weight of authority supports the view that a limitation over or provision for cesser or forfeiture in a devise or conveyance of a legal life estate, to take effect upon voluntary alienation, is valid and effective where, upon the happening of such contingency, the life estate terminates or passes to someone else, and the life tenant ceases to enjoy the same. 160 A.L.R. 655 IV; Am. Law Inst. Restatement, Property, Vol. 4, § 409. In Camp v. Cleary, 76 Va. 140 [(1882)], the court, speaking of a legal life estate, said:
“ ‘ “It seems, however, to be clear that there is nothing in the law that prevents one man from limiting an estate to another until he alien it or attempt to alien it, or until he become bankrupt or insolvent, and if and as soon as he aliens or attempts to alien, or becomes bankrupt or insolvent, that his estate shall cease and go to another. This is what is called, in *1047 technical language, a conditional limitation, which is possible under the statutes of uses and devises. In such case the happening of the contemplated contingency ipso facto determines the estate of the first taker and vests it in the other to whom it is limited.” ’
“Our case of Libby v. Winston, 207 Ala. 681, 93 So. 631, 632 [(1922)], in holding certain conditions in a deed valid, quotes the following from Gray v. Blanchard, 8 Pick., [25] Mass., 284 [(1829)], with approval:
“ ‘ “Every proprietor of an estate has jus disponendi (the right of disposing). He may grant' it with or without condition; and if he grants it upon condition directly, the estate of the grantee will terminate with the breach of the condition, if the grantor chooses to avail himself of the forfeiture and enter for the breach.” ’
“This court further said: ‘The grantor’s intent to convey a defeasible estate only is clear and unequivocal. His language leaves no doubt of his purpose in that respect.’
“In H.H. Hitt Lumber Co. v. Cullman Coal & Coke Co., 200 Ala. 415, 76 So. 347, 348 [(1917)], it was said that a condition in a deed to standing timber was not void where ‘the intent of the grantor to make a conditional estate is otherwise clearly and unequivocably indicated.’ ”
269 Ala. at 356-57, 113 So.2d at 514-15.
In Cotney, our supreme court determined that the language that was at issue in that case was clear and unequivocal that the grantee was to hold the life estate subject to the condition that she would not voluntarily convey it. 269 Ala. at 357, 113 So.2d at 515. In the present case, however, unlike in Cotney, there is no additional language of defeasance indicating that, if Gail failed to continue living on the property or if she failed to use the rental-property proceeds to maintain the home, she would forfeit her life estate or, if so, indicating to whom the property would pass. See also Pritchett v. Turner, 437 So.2d 104, 108 (Ala.1983) (“the direct restraint upon the children’s power to alienate to their mother was ‘validly interposed’ by means of a defeasible estate”). There is no specific right to forfeiture attached to the expression of the decedent’s desire that Gail live in the Brewer Road home. Thus, even if that expression purported to create a condition subsequent on the grant of a life estate to Gail, that condition was ineffective to divest her of her life estate in the Brewer Road home. See Fruth v. Shultz (No. WD-94-052, May 12, 1995) (Ohio Ct.App.1995) (not reported in N.E.2d or Ohio App.) (Because no specific right to forfeiture was attached to the expression of desire that appellant continue to live in the home, the condition is ineffective to divest appellant of her life estate.). Because, as discussed in Cotney, the decedent’s intent to convey a defeasi-ble estate is not clear and unequivocal by the language used in the antenuptial agreement, we conclude that the pertinent language of the antenuptial agreement relied upon by the trial court is merely sur-plusage and does not impose conditional limitations on Gail’s life estate intended to result in the forfeiture of her life estate if the conditions were not met.
To the extent the trial court determined in its judgment that Gail had violated the requirement in its decree on final settlement of the estate that Gail “shall use the rental property proceeds to maintain the Brewer Road home, to include property taxes and insurance,” we note that “trial courts may not dispose of property addressed in an antenuptial agreement in a manner that is inconsistent with that agreement.” Hubbard v. Bentley, 17 *1048 So.3d 652, 654 (Ala.Civ.App.2008). Because we have concluded that the language used in the antenuptial agreement did not create a conditional limitation on Gail’s life estate, we conclude that the language used in the trial court’s decree on final settlement of the estate also did not act as a limitation on Gail’s life estate. We note further that the life-estate warranty deed granting Gail a life estate in the Brewer Road home makes no mention of any purported limitations on that grant.
The trial court also states in its judgment that future tenants of the Brewer Road home “may commit waste on the property and damage the future interest of the remainder men.” It is settled law that a life tenant may not impair the remainder interest or commit or authorize the commission of waste. See C.W. Zimmerman Mfg. Co. v. Wilson, 147 Ala. 275, 40 So. 515 (1906). Thus, the trial court’s finding does not support the conclusion that Gail forfeited her right to the property based on the mere possibility of waste. Rather, any future holder of the life estate will be similarly charged with protecting the property for the remaindermen.
Because the trial court erred in concluding that Gail’s failure to live in the Brewer Road home, her cancellation of the property insurance on the Brewer Road home, or the possibility that future tenants might commit waste on the property resulted in the forfeiture of her life estate on the Brewer Road home, we reverse the trial court’s judgment finding Gail in contempt and purporting to divest Gail of her life estate in the Brewer Road home. As a result, we pretermit consideration of the other issues raised by Gail on appeal. We remand the case to the trial court with instructions that it vacate its November 5, 2013, judgment and enter an order in accordance with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P. J., and THOMAS, MOORE, and DONALDSON, JJ., concur.