Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

———————————————

## CL-2024-0277

———————————————

## Felicia Thrift and Jeffery Landrum

### v.

## Charles Sparks

## Appeal from Clay Circuit Court
## (CV-22-900048)

HANSON, Judge.

Felicia Thrift, the current owner of a fee-simple interest in a particular parcel of real property in the town of Cragford in Clay County, and Jeffery Landrum, the previous owner of that interest (collectively "the grantees"), appeal from a judgment entered by the Clay Circuit

Court ("the trial court") that, among other things, declared that the deed conveying the property to Landrum should be reformed to include a life estate in favor of Landrum's grantor, Charles Sparks ("the grantor"), and determined that the grantor was entitled to other relief. We affirm in part, reverse in part, and remand.

In September 2022, the grantor initiated a civil action in the trial court naming the grantees as defendants; in his complaint, the grantor alleged that, although he had contracted to transfer the subject real property to Landrum for a total price of $200,000, the parties had entered into a contemporaneous written agreement ("the agreement") that contained a number of terms relating to aspects of the property and to the personalty located thereon. A copy of the agreement, identifying the grantor as "Seller" and Landrum as "Buyer," was attached as an exhibit to the grantor's complaint, revealing the following pertinent provisions:

"1. <u>Seller to Retain Possession of Residence</u>. For the remainder of his lifetime, Seller shall have the right occupy [sic] the residence located on said real property for so long as he continues to use the same as his primary residence. Should Seller be required for any health-related reason to temporarily vacate the residence, Buyer shall take possession of the residence for purposes of maintenance and repair until such time as Seller shall return to full occupancy. Should Seller cease to use the residence as his primary residence for any other reason, his occupancy right shall terminate. The

2

possessory right granted herein is personal to Seller and shall not be transferred by him to any other person or entity. Upon the termination of Seller's possessory right for any reason, including the death of Seller, the right of possession shall vest immediately in Buyer and no other person shall have any right to enter the residence without Buyer's consent.

"....

"4. <u>Cottage at Alabama Gold Camp</u>. The parties agree that Seller shall the [sic] exclusive personal right to use the cottage located at the Alabama Gold Camp for so long as he desires, PROVIDED THAT Buyer [sic] shall, at his expense, furnish propane gas and Direct TV for the cottage for so long as he uses the same. Buyer shall, at his expense, furnish power and water to the cottage. The right to use the cottage is for Seller's personal use and shall not be assigned by him to any other person or entity.

"5. <u>Buyer's [sic] Furniture, Tools, Appliances, and Personal Effects</u>. A list of all items of furniture, tools and equipment, appliances, and other personal effects belonging to and retained by Seller is attached hereto as Schedule 1 and is incorporated herein by reference. The parties acknowledge and agree that all items included on Schedule 1 are and shall remain the property of Seller regardless of where they may be located. Buyer shall be notified in writing by Seller of any items on Schedule 1 which are removed from the property or otherwise disposed of during Seller's lifetime, to be indicated in the spaces provided by each listed item shown on Schedule 1. Buyer agrees that he shall make any items listed on Schedule 1 remaining on the property after the death of Seller available, by appointment, to the personal representative of Seller's estate for a period of thirty (30) days after the personal representative has received letters of administration/testamentary authorizing the personal representative to act on behalf of the estate. It is the intention of the parties that all items of personal property currently

3

located on the property and in any building which are not listed on Schedule 1, including, but not limited to, appliances, furniture, household goods, mowers, and utensils shall remain with the property and are part of the property which is being conveyed to Buyer.

"6. Agreement to Survive. This agreement shall survive the closing of the contemplated real estate transaction and shall be enforceable in accordance with its terms by either party at all times.

"7. Binding Effect; Governing Law. This contract shall be binding upon and inure to the benefit of Seller and Buyer and their respective successors, heirs, administrators, executors and assigns. This contract shall be construed according to the law of the State of Alabama and the rights, remedies, privileges and powers granted to the parties hereunder shall be deemed cumulative and in addition to those granted by law."

The record on appeal further reveals that, on the same day that the grantor and Landrum executed the agreement, the grantor conveyed fee-simple title to the subject real property via a warranty deed in which the grantor "covenant[ed] … that [he was] lawfully seized in fee simple of said promises" and that "they are free from all encumbrances." In turn, Landrum gifted to Thrift his interest in the subject real property in March 2018.

The grantor alleged in his complaint that, following Landrum's conveyance of the subject real property to Thrift, the grantees had

interfered with the grantor's rights as to the subject real property and had sought to evict him from the property. The grantor sought both damages and equitable relief from the trial court based upon the alleged conduct of the grantees, who answered the complaint and asserted a counterclaim asserting, among other things, that the "revocable license" of the grantor to occupy the residence on the subject real property had been "terminated" and that the grantor had converted personalty owned by the grantees. After an ore tenus proceeding, at which all parties testified, the trial court entered a judgment declaring that the grantor, by virtue of the agreement, "holds a valid and enforceable life estate in the subject property," including the "the home, yard, carport, garage, workshop, and garden" thereon; directed that the deed executed by the grantor be reformed to expressly recognize that life estate and that Thrift "execute a life estate deed" to the grantor; denied relief as to the grantees' counterclaims; and found in favor of the grantor as to a breach-of-contract claim as to the Alabama Gold Camp cottage, awarding damages of $13,260. After their postjudgment motion to alter, amend, or vacate the judgment had been denied in part, the grantees, through new counsel,

5

appealed to this court and posted a supersedeas bond so as to suspend the operation of the judgment pending their appeal.

The grantees set forth four issues in their brief, but they essentially challenge two aspects of the judgment under review: (1) the trial court's determination that the agreement had operated to reserve a life estate in the real property at issue so as to warrant the remedy of reformation, and (2) the award of damages as to the Alabama Gold Camp cottage. The grantees state, and the grantor does not dispute, that the applicable standard of appellate review is that set forth in Rearick v. Sieving, 103 So. 3d 815, 818-19 (Ala. Civ. App. 2012), which quotes Kellis v. Estate of Schnatz, 983 So. 2d 408, 412 (Ala. Civ. App. 2007), for the following pertinent principles: (1) a presumption of correctness exists as to the trial court's express and implied findings on issues of fact and its judgment based on those findings will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence; and (2) the trial court's resolution of legal questions is not due deference by a reviewing court.

We are guided by Rearick in our evaluation of the issues raised regarding the precise nature of the grantor's residual interest in the

6

subject real property because of the striking factual and legal parallels that this case presents. In <u>Rearick</u>, a trial court heard evidence that the occupant of a mobile home located on a parcel of real property had acted on her daughter's behalf to sell that parcel to two owners of adjacent property for $50,000, but that the seller and the buyers had immediately then entered into a collateral agreement under which the seller would have the right "'to live in the present residence on the … property for the rest of her natural life'" and that the seller would have the obligation to maintain the residence "'in its current condition,'" 103 So. 3d at 817; the seller unsuccessfully contended that the collateral agreement had reserved in her a life estate as to the parcel at issue, whereas the buyers posited (and the trial court agreed) that the collateral agreement amounted to nothing more than a license conferring upon the seller a personal privilege to continue occupying the residence on the property that could be revoked by the buyers. The trial court in <u>Rearick</u> heard testimony not only from the parties but also from the attorney who had drafted the collateral agreement, who had acted as the closing agent for the real-estate transaction, and who testified that not only had no party requested that she draft a document reserving a life estate, but also that

7

she had "specifically intended to draft the [collateral] agreement in such a manner that it would not be interpreted as creating a life estate." 103 So. 3d at 818.

In affirming the trial court's judgment, this court noted that the collateral agreement contained terminology both consistent with an intent to create a life estate (i.e., the reference to the " 'rest of [the seller's] natural life' ") and with an intent to afford the seller a license (i.e., a reference to " '[w]e … do hereby agree to allow' " the seller to live in the residence on the property), 103 So. 3d at 819, and we rejected the proposition that the trial court in that case could not consider the circumstances attending the collateral agreement's execution and the subsequent acts of the parties in interpreting the agreement, 103 So. 3d at 821. This court ultimately concluded that "the language in the [collateral] agreement, when taken as a whole, indicate[d] that the [buyers] intended to <u>permit</u> [the seller] to continue living in the mobile home [on the parcel], not to convey to her a life estate in the property," and we further observed that there was no consideration given or received in connection with the agreement such that the buyers could properly be considered as having "undone" a bargain. 103 So. 3d at 821-

8

22. We thus concluded that the trial court's judgment in <u>Rearick</u> was correct.

To be sure, <u>Rearick</u> does not constitute a perfect analogy. The most notable difference between the procedural posture of this case and that of <u>Rearick</u> is that the party that conveyed the fee-simple interest in this case, unlike the seller in <u>Rearick</u>, prevailed at trial. Moreover, the trial court in this case did not hear testimony from the drafter of the agreement, but it did hear evidence tending to show that the grantor had agreed to convey the subject real property to Landrum for less than its market value (i.e., for $200,000 instead of $280,000-$300,000, which was the range of valuations for the property as of the date of its conveyance to Landrum given by a real-estate appraiser and by the grantor himself) in consideration for the continued right to occupy the residence on the property. Nonetheless, the language utilized by Landrum's drafting agent is telling: the grantor is afforded in the agreement a personal "right [to] occupy the residence located on" the subject property, one that expressly "terminate[s]" if he "cease[s] to use the residence as his primary residence for any … reason" other than because of health concerns during his lifetime and that cannot "be transferred by him to any other person

9

or entity." As we noted in <u>Rearick</u>, such language in a collateral agreement that permissively allows one to continue to occupy a residence on property that has been conveyed by deed to another in fee simple without any reference to the occupier's interest "is indicative of" a <u>license</u> rather than an interest in the underlying property itself. <u>See</u> 103 So. 3d at 821. That language is further consistent with Landrum's trial testimony to the effect that he "was going to let [the grantor] live in the house until he passed away" because Landrum had no present "intent to use the house"; Landrum testified that he had anticipated that Thrift, whom he identified as his long-term romantic partner, would use the residence after his own death. The grantor, for his part, testified that he and Landrum had reached an understanding that the grantor "could live there for the rest of [his] life … [u]ntil [he] wanted to move" and that he would not have agreed to sell the property without the ability to live there under those terms; however, he admitted that he "didn't read all the stuff" that Landrum's attorney had prepared to memorialize the transaction and denied that he "want[ed] to control the property that [Landrum] owns," but instead wanted "to live in the house and the yard and the barn that [the grantor] use[d] every day."

Alabama's statute codifying the reformation of real-property conveyances, Ala. Code 1975, § 35-4-153, predicates the availability of reformation upon a showing of "fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected." Under that statute, "'the party seeking reformation'" -- that is, the grantor in this case -- "'must produce clear, convincing, and satisfactory evidence that the deed does not express the true intentions of the parties at the time the instrument was created' … [and] 'clear, convincing, and satisfactory evidence of what the parties actually intended the writing to express.'" Regions Bank v. Dean, 29 So. 3d 201, 205 (Ala. Civ. App. 2009) (quoting Fadalla v. Fadalla, 929 So. 2d 429, 434-35 (Ala. 2005)). Conversely, "[t]he trial court cannot make the instrument express a new contract for the parties." Beasley v. Mellon Fin. Servs. Corp., 569 So. 2d 389, 393 (Ala. 1990).

The most evidence in support of reformation that the grantor showed in this case is that the deed conveying the real property in question to Landrum did not separately include language memorializing his contractual right to continuously occupy the residence on the property until either his death or his voluntary departure from the residence for

11

nonmedical reasons. That right, however, is not congruent with a reservation of a life estate, which is, under Alabama law, a marketable interest in land that is ordinarily conveyable to third persons (see Thrasher v. Thrasher, 169 So. 3d 1043, 1045 (Ala. Civ. App. 2014)) in a manner wholly inconsistent with the parties' purely personal agreement in this case (which limits the reserved occupancy right to the grantor only and extinguishes it in the event of an attempted conveyance or a voluntary departure by the grantor from the residence). There is no evidence that the inclusion in the deed from the grantor of the habendum clause conveying the property "in fee simple forever" was the product of fraud or mistake at the time of the execution of the deed so as to be within the scope of § 35-4-153. See Miller v. Davis, 423 So. 2d 1354, 1356-57 (Ala. 1982) (affirming judgment declining to cancel or reform deed that grantor had not read before signing; no evidence was presented that the intent of grantee was contrary to what the deed reflected or that grantee had otherwise acted inequitably).

It is apparent from the parties' testimony that the amicable relations between the grantor and Landrum that impelled Landrum to agree in 2017 to the grantor's continued occupation of the residence on

the subject property deteriorated in the years following the conveyance of the property to Landrum and that the grantees have apparently taken steps to terminate the grantor's occupancy right for reasons other than those stated in the agreement.[1]  However, those subsequent events do not authorize amending the grantor's deed to Landrum to include a new life estate for the benefit of the grantor.  See Beasley, 569 So. 2d at 393. To the extent that the trial court's judgment declared that the grantor was entitled to a life estate with respect to any part of the real property at issue, we reverse that judgment.

The sole remaining issue raised by the grantees concerns the damages award ($13,260) with respect to the Alabama Gold Camp cottage.  As we have stated, the contract between the grantor and

---

[1]We do not reach the question whether the trial court should have, instead of determining that the grantor should have been conveyed a life estate, concluded (as the grantor insists on appeal) that the grantor's contractual right to occupy the residence amounted to an irrevocable license by virtue of his purportedly having accepted a below-market price for conveying the real property.  See Municipal Workers Comp. Fund, Inc. v. Morgan Keegan & Co., 190 So. 3d 895, 925 (Ala. 2015) (Murdock, J., concurring specially) (a judgment may not properly be affirmed by an appellate court upon "some alternative ground presented to, but not decided by, the trial court" unless it involves a pure question of law or some question of fact that can be decided in an appellee's favor as a matter of law consistent with due process).

Landrum provided that the grantor was to have the "<u>exclusive</u> personal right to use the cottage located at the Alabama Gold Camp <u>for so long as he desires</u>" (emphasis added), along with setting forth additional terms governing the furnishing of propane, satellite-television service, electricity, and water to that cottage and addressing the nonassignability of the grantor's right. The grantor stated at trial that Landrum had once paid the grantor $85 when Landrum's agent had stayed overnight at the cottage at the Alabama Gold Camp with the grantor's permission; he further testified that Landrum had stated "I want you out of here" in July 2021 as the grantor was leaving that cottage and that Landrum had directed the grantor to remove his personal effects from the cottage and not to return (an event that would have occurred no later than 107 weeks before that testimony was given at trial in August 2023). Additional testimony from the grantor indicated that he had previously used the cottage at least 2 times per week, which would yield a mathematical product of $18,190 ($85 rental times 107 weeks times a minimum of 2 visits per week), but Thrift testified that the grantor had not actually stayed at the cottage overnight (as Landrum's agent had). Furthermore, and the trial judge stated at the hearing on the postjudgment motion that

14

he had utilized a "lower end" amount in determining the damages to be awarded for the denial of the grantor's use of the cottage. Given the principle that "[t]he ordinary measure of damages awarded in actions for breach of contract is an amount sufficient to return the plaintiff to the position he would have occupied had the breach not occurred," Aldridge v. Dolbeer, 567 So. 2d 1267, 1269 (Ala. 1990), and the grantor's presentation of evidence tending to show his having been excluded from his customary usage of the cottage on the Alabama Gold Camp property in contravention of the terms of the agreement, we cannot conclude that the trial court acted outside its discretion in its award of damages as to that breach.

Based upon the foregoing facts and authorities, the trial court's judgment is affirmed except insofar as that judgment determined that the grantor is entitled to a life estate upon the real property at issue and reformed the deed from the grantor to Landrum to that effect. The cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards, Fridy, and Lewis, JJ., concur.

15